PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Alston and Senior Judge Bumgardner
Argued at Alexandria, Virginia

DEWAYNE OLIVER WINSLOW

                                                              OPINION BY
v.    Record No. 1447-13-4                    JUDGE D. ARTHUR KELSEY
                                                         DECEMBER 23, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

Dusty Sparrow, Assistant Public Defender (Helen
Randolph, Assistant Public Defender II; Office of the
Public Defender, on briefs), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

The trial court convicted Dewayne Oliver Winslow of one count of grand larceny of

twenty dollars and two laptop computers from a parked automobile.  On appeal, Winslow does

not dispute that the larceny occurred, but he does contest the sufficiency of the evidence proving

he "was the criminal agent."  Appellant's Br. at 2.  We disagree and affirm.

I.

When presented with a sufficiency challenge on appeal, we review the evidence in the

"light most favorable" to the Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514,

578 S.E.2d 781, 786 (2003).  This principle requires us to "discard the evidence of the accused in

conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to

the Commonwealth and all fair inferences to be drawn therefrom."  Parks v. Commonwealth,

221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and internal quotation marks omitted).

In addition, our appellate review "is not limited to the evidence mentioned by a party in

trial argument or by the trial court in its ruling."  Perry v. Commonwealth, 280 Va. 572, 580,

701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record," id., and not limit itself to "merely the evidence that the reviewing court considers most trustworthy," Commonwealth v. Jenkins, 255 Va. 516, 522, 499 S.E.2d 263, 266 (1998).

So viewed, the record shows that Benjamin Duncan left work one afternoon in March 2012. He packed two laptop computers into a leather case and placed the case behind the driver's seat of his car. App. at 39. The laptops had an approximate total value of $2,700. Id. at 43, 45. Duncan then drove directly to a local mall and made no stops on the way. At about 6:30 p.m., he left his vehicle in the mall parking garage and entered the mall. Although Duncan thought that he had locked the car using the lock button on his key fob, it was possible that he had inadvertently hit the unlock button instead. Id. at 36. Approximately three hours later, he returned to his vehicle and began the drive home.

Duncan drove up to a toll booth and reached into his center console where he kept cash in a small metal box. Earlier that day, there had been approximately twenty dollars of U.S. currency in the box, which had been in the car for about one year and was used regularly by Duncan for parking fees and tolls. When he reached the toll booth, however, the box only contained a few "Egyptian coins" and "Egyptian bills" that were of no use to him. Id. at 38, 54. Because the money was missing, Duncan immediately "realized that somebody had probably been in [his] car and taken it," so he "reached back" to check on the case that had contained the laptops. Id. at 38. Duncan then discovered that the two laptop computers were also missing from his car.

Believing that someone had stolen the money and laptops while the vehicle was parked in the mall parking garage, Duncan immediately drove to a local police station to report the theft.

Police investigators found no signs of forced entry but did retrieve five latent fingerprints from the small metal box. A fingerprint expert later concluded that three of the five were "of no value," or incapable of being processed through the system, because they were "either smudged or distorted." Id. at 74. The other two were clean prints, capable of being matched to a known person. The expert matched one of the prints to Duncan and the other to Winslow.[1] Duncan had never seen or met Winslow, had never given him permission to be in his vehicle, and had never known him to be in his vehicle or to touch the metal cash box. Additionally, Duncan did not valet park the vehicle on the day of the theft or have it "detailed or washed" by others. Id. at 51.

At trial, Winslow claimed that the evidence did not sufficiently link him to the theft. His counsel argued that fingerprint evidence "found at the scene of a crime must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. And in this case, your Honor, the Commonwealth cannot fulfill that obligation." Id. at 104. Winslow did not, however, contest the expert's conclusion that his fingerprint was on the small metal box. Instead, his counsel argued only that "[t]he fact that Mr. Winslow's fingerprint is solely on the box proves nothing more than he touched the box." Id. at 107.

Sitting as factfinder, the trial court found that the circumstantial evidence combined with Duncan's testimony reasonably precluded the hypothesis that Winslow had handled Duncan's money box at some time other than the commission of the theft. The trial judge concurred in the underlying legal principle advocated by Winslow's counsel, but based on evidence that he found

---

[1] The expert had thirty-one years of experience in the field of fingerprint identification and had received training in fingerprint analysis through the Federal Bureau of Investigation and the Northern Virginia Police Academy. Additionally, a second fingerprint expert verified the analysis of the fingerprints and came to the same identification conclusions. The second expert had thirty-seven years of experience as a fingerprint examiner and instructor for the Federal

credible, the trial judge concluded "there would have been no other reason" for Winslow to have been in the vehicle other than to consummate the theft. Id. at 112.

After the trial court found Winslow guilty, Winslow's counsel filed a motion to set aside the guilty verdict. Winslow's written motion narrowed his challenge to the sufficiency of the evidence. The motion stated: "In Winslow's case, the evidence presented . . . was not sufficient to sustain a conviction as a matter of law. Specifically, the Commonwealth failed to prove beyond a reasonable doubt that Winslow committed Grand Larceny by taking the laptops located in the backseat of the vehicle." Id. at 6. The motion concluded that "the Commonwealth's evidence shows that at best, Mr. Winslow committed petit larceny as it related to the $20 taken from the cash box that his fingerprint was found on. It does not, however, show that he is responsible for taking the laptop computers." Id. at 7.

At a hearing to address this motion, Winslow's counsel again conceded that the evidence showed that "Winslow's fingerprints were found on a metal box in the console of an automobile that was left unlocked" in the mall parking lot. Id. at 117. Winslow's counsel then added that the trial court, as factfinder, "should have only found [Winslow] guilty of [petit] larceny and not the grand larceny." Id. at 118. The trial court denied Winslow's motion.

II.

On appeal, Winslow does not contest that the larceny occurred, but he does dispute the sufficiency of the evidence proving he "was the criminal agent." Appellant's Br. at 2. Sitting as factfinder, the trial court disagreed. We see no reason to disturb that finding.

---

Bureau of Investigation, a fingerprint specialist with the United States Secret Service, and a fingerprint technician for the Terrorist Explosive Devices Analytical Center.

A.  STANDARD OF APPELLATE REVIEW

In a bench trial, a "trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise."  Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004) (quoting Anderson v. Bessemer City, 470 U.S. 564, 574 (1985)). We thus examine a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006).  "If reasonable jurists could disagree about the probative force of the facts," Holloway v. Commonwealth, 57 Va. App. 658, 664, 705 S.E.2d 510, 513 (2011) (*en banc*) (internal quotation marks omitted), the "reviewing court is not permitted to substitute its own judgment" for that of "the finder of fact at the trial," Courtney v. Commonwealth, 281 Va. 363, 366, 706 S.E.2d 344, 346 (2011) (internal quotation marks omitted).

Put another way, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).  Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (emphasis added).

This deferential appellate standard "applies not only to the historical facts themselves, but the inferences from those facts as well."  Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (internal quotation marks omitted).  This approach enables the factfinder to "draw reasonable inferences from basic facts to ultimate facts," Tizon v. Commonwealth, 60 Va. App. 1, 10, 723 S.E.2d 260, 264 (2012) (quoting Haskins, 44 Va. App.

at 10, 602 S.E.2d at 406), "unless doing so would push 'into the realm of *non sequitur*,'" id. (quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231).

### B. THE PROBATIVE VALUE OF FINGERPRINT EVIDENCE

The legal principles governing the probative value of fingerprint evidence have been settled for a century: "Signatures have been accepted as evidence of identity as long as they have been used. The fact of the individuality of the corrugations of the skin on the fingers of the human hand is now so generally recognized that a fingerprint is in reality an unforgeable signature." Avent v. Commonwealth, 209 Va. 474, 478, 164 S.E.2d 655, 658 (1968) (alterations and internal citation marks omitted).

It is true, as Winslow contends, that a mere fingerprint viewed in isolation, wholly independently of any contextual circumstances, often falls far short of proving guilt. But it is equally true that

> the circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime need not be circumstances completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed. A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and circumstantial evidence, that the accused was the criminal agent.

Id. at 479-80, 164 S.E.2d at 659 (internal quotation marks omitted); see also Tyler v. Commonwealth, 254 Va. 162, 167, 487 S.E.2d 221, 224 (1997) (holding that fingerprint evidence "coupled as it was with attendant circumstances" was sufficient to prove that the defendant was the "criminal agent"); Turner v. Commonwealth, 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977) (holding that "coupled with the evidence of defendant's fingerprint, those 'other

circumstances', discussed in <u>Avent</u>, [were] sufficient to create a rational inference that the defendant was the criminal agent").[2]  It necessarily follows that

> the prosecution is not required to *affirmatively* and *conclusively* prove to a *certainty* that the print *could not* have been made other than at a time when the crime was committed.  As we noted in <u>Avent</u>, the fingerprint evidence need be joined only with evidence of other circumstances tending to *reasonably* exclude the hypothesis that the print was made at some other time than during commission of the crime.

<u>Turner</u>, 218 Va. at 148, 235 S.E.2d at 361 (citation omitted); <u>see</u> <u>also</u> <u>Ricks v. Commonwealth</u>, 218 Va. 523, 526-27, 237 S.E.2d 810, 811-12 (1977) (noting that "the Commonwealth had no duty to go further than it did in negating [the defendant's] hypothesis of innocence" when "the evidence of the [fingerprint] and the attendant facts demonstrate the accused was present at the scene when the crimes were committed").[3]

As Winslow's counsel correctly conceded in the trial court, the fingerprint evidence proved Winslow's guilt in taking the money from the small metal box.  <u>See</u> App. at 6-7, 118. Duncan had seen the money that very day, around noon, in the metal box kept in the center console of the vehicle.  He discovered the money missing after driving away from the mall parking lot.  Winslow's fingerprint on the box proved that Winslow had handled it.  Duncan's testimony that he had never seen Winslow, did not know him, and certainly had never given him access to his vehicle closed the circumstantial loop and demonstrated that Winslow had taken the

---

[2] <u>But</u> <u>see</u> <u>Williams v. Commonwealth</u>, 212 Va. 818, 819, 188 S.E.2d 79, 80 (1972) (finding insufficient mere "proof of fingerprints on a television set that had been displayed in a showroom" accessible to the public).

[3] On appeal, Winslow calls our attention to several federal cases addressing these principles.  While we appreciate the advocacy, we concur with what has been said before on this subject:  "The defendant relies upon fingerprint cases from the federal courts and from other jurisdictions, but we need not search afield for guidance.  The principles enunciated in <u>Avent v. Commonwealth</u>, 209 Va. 474, 164 S.E.2d 655 (1968) control the disposition of this case." <u>Turner</u>, 218 Va. at 146, 235 S.E.2d at 360.

money while the vehicle was parked in the mall parking lot.  These facts proved that Winslow had no "business or reason," Tyler, 254 Va. at 167, 487 S.E.2d at 224, to be in Duncan's vehicle.

It would also be naïve to suppose that Winslow, while stealing twenty dollars from Duncan's metal box, did not also steal the two laptop computers (worth far more) at the same time.  "When the Commonwealth relies solely upon fingerprint evidence to identify a criminal agent, it bears the burden of excluding every *reasonable* hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'"  Id. at 166, 487 S.E.2d at 223 (quoting Turner, 218 Va. at 148, 235 S.E.2d at 361).  There is no evidence in this case to support an inference that someone other than Winslow entered Duncan's vehicle and stole the laptop computers during the same, purely coincidental time frame in which Winslow took the money.

### III.

Viewed in their totality, the circumstances of this case provide ample evidence from which a rational factfinder could conclude that Winslow stole the money and the laptop computers from Duncan's vehicle.  Winslow's argument to the contrary has no merit.  We thus affirm his convictions.

Affirmed.