UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Huff, Judges Beales and AtLee
Argued by teleconference


CHRISTOPHER LOVE HOWARD

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1621-14-2             JUDGE RANDOLPH A. BEALES
                                                    JULY 21, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

        Russell N. Allen for appellant.

        Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
        Herring, Attorney General, on brief), for appellee.


        Christopher Love Howard (appellant) appeals his convictions in a bench trial for attempted

robbery in violation of Code §§ 18.2-58 and 18.2-26; use of a firearm in the commission of an

attempted robbery in violation of Code § 18.2-53.1; and possession of a firearm by a violent

convicted felon in violation of Code § 18.2-308.2.  Appellant argues that the trial court erred in

finding that the Commonwealth introduced sufficient evidence to support his convictions.

Specifically, appellant contends that the evidence was insufficient "to convict Howard of attempted

robbery and use of a firearm when the victim could not identify him, Howard made no inculpatory

statements, and the fingerprint evidence was not timely established."  We hold that the trial court

did not err when it found that the evidence was sufficient beyond a reasonable doubt to find

appellant guilty of each charge, and, accordingly, for the following reasons, we affirm appellant's

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

convictions for attempted robbery, use of a firearm in the commission of an attempted robbery, and possession of a firearm by a violent convicted felon.

## I. BACKGROUND

We consider the evidence on appeal "'in the light most favorable to the Commonwealth, as we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)).

In this case, Bryant Bogle, the victim, testified that shortly after midnight on March 27, 2012, he heard car doors shutting as he was walking up to the door of his home. When Bogle looked back, he saw two individuals – later identified as Orlando Fogg (appellant's co-defendant) and appellant – getting out of a silver SUV. As soon as the two individuals got out of the silver SUV, they began to run toward Bogle. One of the two individuals was holding a gun with a laser sight and called out to Bogle, "Don't run"! In response to this command, Bogle actually "took off running" because he said he knew that the two individuals were trying to rob him. As soon as Bogle ran, the individual who was holding the gun began to chase after him. Bogle was able to get to a house within the immediate vicinity. Once at the house, he banged on the door in an attempt to notify the occupants of the house that he needed help. Nobody responded so Bogle ran to the backyard of the house. At that point, the individual with the gun caught up with Bogle and said, "Let's go," "Come on," and "Do you think I'm fucking playing with you?" In explaining what that statement meant, Bogle testified that "[h]e tried to get me to walk back to [my] house" because "they [were] going to try . . . to rob me." Instead of going back to his house, however, Bogle simply began to step back with his hands open and his arms up – away from the individual with the gun. As he was backing away, he dropped his cell phone. The individual with the gun never specifically demanded any of Bogle's property or money, and did not take the cell phone that Bogle had

- 2 -

dropped on the ground. The silver SUV then shortly pulled up to the house, and the individual with the gun walked back to the silver SUV and got into it. The silver SUV then pulled away from the scene and "circled around" – just as the police arrived.

At 12:46 a.m., Officer Snowa of the Henrico Police Department was dispatched to a particular address near the scene of the encounter between Bogle and the two individuals. Officer Snowa soon noticed a silver SUV that was leaving the area at a high rate of speed after it went past a stop sign without stopping. Officer Snowa began to follow the silver SUV. He soon activated his lights and sirens, and began to pursue the silver SUV at a high rate of speed. Soon thereafter, the silver SUV crashed into a pole and rotated 180 degrees so that it was facing Officer Snowa's vehicle by the time it came to rest. The two individuals in the silver SUV exited the crashed vehicle and took off in different directions. Officer Snowa chased after the driver, and Officer Snyder – who arrived at the scene of the crash shortly after Officer Snowa did – chased after the passenger. As he was pursuing the passenger on foot, Officer Snyder noticed that he threw something over a fence into a yard. When Officer Snyder returned to that yard later, he testified that he "found a barrel and a slide" of a firearm. At trial, Bogle testified that the photograph of that recovered weapon was "similar" to the gun that he saw during the incident on March 27, 2012. Richmond City Police ultimately apprehended the driver – who was later identified as Orlando Fogg – in Richmond. Appellant was not apprehended that night. Four to five hours after the crash, in an effort to ascertain the identity of appellant, Officer Snowa looked under the "known associates" section of Orlando Fogg's police database profile. As soon as he came across appellant's photograph in the "known associates" section of Fogg's profile, Officer Snowa contacted the detective on the case and explained that he was 99% sure that appellant was the other individual he had witnessed at the scene of the crash.

On March 28, 2012 – just one day after the incident – a search warrant was executed on the silver SUV which, by then, had been towed to the Forensics Garage. The police recovered a number of items from the silver SUV, including a Hawaiian Punch bottle in a plastic trash bag on the passenger side floor; a Hawaiian Punch bottle (Polar Blast flavored) on the front passenger seat; ninja mask packaging in the front passenger side door; a ninja mask on the rear passenger floor; a black baseball cap on the rear driver's side floor; and a black Champion hooded sweatshirt, size 3XL, on the rear driver side door. Fingerprint evidence was taken from the silver SUV and from items found inside of it. Of the fingerprints collected, two were identified as belonging to appellant. One of those two fingerprints appeared on the Polar Blast Hawaiian Punch bottle. The other of those two fingerprints came from the exterior of the passenger front door of the silver SUV.

At trial, Bogle, Officer Snowa, and Officer Snyder each testified as to what they remembered about the two individuals' appearance and attire on the night of the incident. Although Bogle was unable to provide an in-court identification of the individuals who he said tried to rob him, he did recall specific aspects of the individuals' appearance. According to Officer Snyder's testimony, on the night of the incident, Bogle had described one of the individuals as "wearing black with a red ball cap on or a knit hat." At trial, Bogle testified that the individual with the gun "had on a, like all black, black mask, red and black hat" and that the second individual had on a white T-shirt. Bogle testified that the individual with the white T-shirt "was coming from the driver's side" of the silver SUV when the two individuals jumped out of the silver SUV at Bogle's residence. Bogle further testified that the individual with the gun climbed back into the silver SUV when it later pulled up to the location where the gunman had chased and cornered Bogle. Officer Snyder testified that the individual who got out of the passenger side of the silver SUV after it had shortly thereafter crashed "had all black on with the red hat." When defense counsel asked Bogle if

there was a streetlight close to where the encounter between Bogle and the two individuals took place, Bogle replied, "[p]orch lights, street lights, everything, yes."

Officer Snowa testified that, because his headlights were shining directly towards the front of the crashed silver SUV, he was able to see the two individuals who were in the silver SUV. Officer Snowa made an in-court identification of the driver (Orlando Fogg) and appellant. He identified Fogg as the driver of the silver SUV and stated that he was "99 percent sure" that appellant was the passenger of the silver SUV. Officer Snowa explained that he had the opportunity to view both the driver and the passenger for "[m]aybe three to five seconds" from a distance of somewhere between fifteen and twenty feet. Regarding the lighting conditions of the scene of the crash, Officer Snowa testified that "[i]t was very well lit" and that there were "street lights all the way down."

In finding appellant guilty, the trial court explained, in relevant part, as follows:

> [T]his is beyond any type of reasonable doubt for this Court. Officer Snowa didn't fudge. He quite candidly said he's 99 percent sure. He can't say 100 percent sure, but 99 percent sure about Mr. Howard being the person who was there, compounded by the same description by Officer Snyder in terms of his description about what he had and where, followed by the same description about what Mr. Fogg has to be found in this matter.

## II. ANALYSIS

Appellant challenges the sufficiency of the evidence to support a finding that he committed attempted robbery and the associated firearms offenses. When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at

- 5 -

574, "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). See also Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

It is well established in Virginia that "robbery is a common law crime defined as the 'taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" Jay v. Commonwealth, 275 Va. 510, 524, 659 S.E.2d 311, 319 (2008) (quoting Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964)). Attempted robbery is also defined at common law, and "requires the Commonwealth 'to prove beyond a reasonable doubt that [the defendant] intended to steal personal property from [the victim], against his will, by force, violence, or intimidation. Additionally, the Commonwealth must prove beyond a reasonable doubt that [the defendant] committed a direct, but ineffectual, act to accomplish the crime.'" Id. at 524-25, 659 S.E.2d at 319 (quoting Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 78-79 (2000)).[1] In other words, "an attempt to commit" crime contains two elements: "'(1) [t]he intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design.'" Id. at 525, 659 S.E.2d at 319-20 (quoting Glover v. Commonwealth, 86 Va. (11 Hans.) 382, 385, 10 S.E. 420, 421 (1889)). The "direct act" component of attempt is oftentimes referred to as an "overt act." Id. at 525, 659 S.E.2d at 320.

---

[1] Code §§ 18.2-26 and 18.2-58 simply fix the punishment for an attempt to commit a noncapital felony and for robbery, respectively. Neither statute actually defines the offense.

- 6 -

Viewing the evidence in the light most favorable to the Commonwealth (as we must since it was the prevailing party at trial), a rational trier of fact could find that appellant committed the crime of attempted robbery and the associated firearms offenses. In a circumstantial evidence case, such as this one, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Dowden v. Commonwealth, 260 Va. 459, 470, 536 S.E.2d 437, 443 (2000). Here, the combined force of several circumstances in the record suggests that a finder of fact reasonably could have found appellant guilty beyond a reasonable doubt of attempted robbery and the associated firearms offenses.

First, a rational trier of fact could find that appellant was actually the criminal agent who acted in concert with Orlando Fogg on the night of March 27, 2012. The presence of appellant's fingerprints on the Polar Blast Hawaiian Punch bottle – which was found on the front passenger seat – and the presence of appellant's fingerprints on the exterior of the front passenger door help to support a finding that appellant was the passenger and gunman. Appellant argues that his fingerprints could have been placed onto the silver SUV at any time prior to the incident on March 27, 2012. This argument, however, is unpersuasive because "'[a] latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed.'" Winslow v. Commonwealth, 64 Va. App. 121, 129, 765 S.E.2d 856, 860 (2014) (quoting Avent v. Commonwealth, 209 Va. 474, 479-80, 164 S.E.2d 655, 659 (1968)). Here, the accompanying circumstances, viewed in the light most favorable to the Commonwealth, certainly support a finding beyond a reasonable doubt that appellant left his fingerprints at the time of the incident.[2]

_____

[2] Appellant argues that Granger v. Commonwealth, 20 Va. App. 576, 459 S.E.2d 106 (1995), counsels toward reversal. This case is distinguishable from Granger, however. In Granger, the defendant was convicted of malicious wounding and robbery for allegedly striking

Specifically, the testimony of Officer Snowa, the testimony of Officer Snyder, and the testimony of Bogle also help to support the trial court's finding that appellant was the passenger and gunman in this case. Officer Snowa had the opportunity to view appellant for somewhere between three and five seconds at a distance of just fifteen to twenty feet away from the silver SUV. Moreover, it was only four to five hours after the crash that Officer Snowa identified appellant from the "known associates" section of Fogg's police database profile. The trial court clearly found Officer Snowa to be credible, stating "Officer Snowa didn't fudge" and that he "candidly said he's 99 percent sure." "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear [the] evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Bogle and Officer Snyder each provided a similar description of appellant's attire. Officer Snyder testified that on the night of the incident, Bogle told police officers that one of the individuals was "wearing black with a red ball cap on or a knit hat." Bogle testified at trial that the individual with the gun "had on a, like all black, black mask, red and black hat." Officer Snyder testified that the individual who got out of the passenger side of the silver SUV "had all black on with the red hat." Thus, a rational trier of fact could find that appellant was the passenger / gunman in this case.

---

the victim over the head with a glass bottle and taking $150 from the victim's pants pocket. 20 Va. App. at 577, 459 S.E.2d at 106. At least five fingerprints on the broken bottle matched the defendant's fingerprints. Id. In reversing Granger's conviction, this Court determined that the Commonwealth's evidence – which consisted only of the five fingerprints on the broken bottle – did not exclude the hypothesis of innocence that Granger may have handled the bottle for some innocent purpose sometime prior to the incident. Id. Here, however, the Commonwealth has presented evidence in addition to appellant's fingerprints.

Second, a rational trier of fact could find beyond a reasonable doubt that appellant actually did attempt to rob Bogle.[3] The evidence certainly supports a finding that appellant intended to rob Bogle. As soon as appellant got out of the silver SUV, he started running toward Bogle, and yelled out "Don't run"! While Bogle did run, when appellant chased and then cornered him, appellant called out to him, "Let's go," "Come on," and "Do you think I'm fucking playing with you?" According to Bogle's testimony, appellant's demands were made in an effort to force Bogle to return to his own house. A rational trier of fact could infer that appellant was trying to force Bogle back to his house so that he could rob Bogle inside of his house. Appellant was holding a gun throughout the encounter with Bogle, but he never used the gun to shoot at Bogle, to beat Bogle, or to abduct Bogle – even though appellant had ample opportunity to take any of these actions. He simply held the gun and pointed it toward Bogle. A rational factfinder could infer from the fact that appellant did not do anything with the gun other than point it toward

---

[3] The assignment of error in this case states as follows: "The trial court committed reversible error in convicting Howard of attempted robbery and firearm charge; the evidence was insufficient to convict Howard of attempted robbery and use of a firearm when the victim could not identify him, Howard made no inculpatory statements, and the fingerprint evidence was not timely established." The Commonwealth argues that this assignment of error does not encompass appellant's argument that he lacked the intent to rob Bogle because he made no demand for Bogle's property and Bogle did not hand over anything. In Findlay v. Commonwealth, 287 Va. 111, 116, 752 S.E.2d 868, 871 (2014), the Supreme Court held that Rule 5A:12(c)(1) does not "demand[] the inclusion of a 'because' clause or its equivalent in each assignment of error." The assignment of error in Findlay read as follows: "The Petitioner/Appellant assigns as error the trial court's denial of his Motion to Suppress all of the seized videos that came from the defendant's computer, and his computer hard drive, and all derivatives thereof." Id. at 113, 752 S.E.2d at 870. Unlike the assignment of error at issue in Findlay, the assignment of error at issue in this case gives specific reasons to explain why the trial court erred. Specifically, the assignment of error in this case states that the evidence was insufficient to convict appellant of robbery and the associated firearm charge because (1) "the victim could not identify him," (2) "Howard made no inculpatory statements," and (3) "the fingerprint evidence was not timely established." The Supreme Court in Findlay does not indicate whether, if specific reasons are given in an assignment of error in support of the argument why the trial court erred, that assignment of error is inadequate to address other reasons *not* stated in the assignment of error. However, this Court will, in this case, assume without deciding that the assignment of error here is adequate to address appellant's intent argument.

Bogle that he intended to rob Bogle. "That it is possible to surmise or imagine that he had some other purpose different from that found by the [factfinder] is not enough to overcome the reasonable and justified conclusion of the [factfinder] that the evidence showed that he intended to rob" Bogle. Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968) (citation omitted).

Appellant never specifically demanded any property or money from Bogle, but case law does not require that a demand for property or money be actually stated if that demand can be inferred. See, e.g., id. (holding that there was sufficient evidence to support Johnson's attempted robbery conviction beyond a reasonable doubt even though Johnson never made an explicit demand for money or property). Thus, a rational trier of fact could find that appellant had the intent to rob Bogle.

A rational trier of fact could also find beyond a reasonable doubt that appellant made an overt act toward the commission of the crime of robbery. "Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt." Martin v. Commonwealth, 195 Va. 1107, 1112, 81 S.E.2d 574, 577 (1954). In the context of a robbery, the act of pointing the gun at Bogle and then chasing Bogle with the gun certainly constitutes an overt act in this case. Therefore, because the evidence supports a finding beyond a reasonable doubt that appellant intended to rob Bogle and actually took an overt act toward robbing Bogle, the trial court did not err when it found Bogle guilty of attempted robbery and the associated firearms offenses.

III. CONCLUSION

Viewing the evidence in the light most favorable to the Commonwealth, as we must since the Commonwealth prevailed below, the trial court properly found appellant guilty of attempted robbery and the associated firearms offenses. Accordingly, we affirm appellant's conviction for

attempted robbery in violation of Code §§ 18.2-58 and 18.2-26, for using a firearm in the commission of an attempted robbery in violation of Code § 18.2-53.1, and for possessing a firearm as a violent convicted felon in violation of Code § 18.2-308.2.

Affirmed.