## Richmond

## Leon Turner v. Commonwealth of Virginia.

June 10, 1977.
Record No. 760878.
Present: All the Justices.

*James N. Barker, Jr.,* for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the Court.

Defendant Leon Turner was convicted, following a bench trial, of (1) breaking and entering with intent to commit murder and (2) murder in the first degree, for which he was sentenced to imprisonment for ten years and life, respectively. Turner was also indicted but found not guilty of robbing the victim of a wrist watch.

This appeal focuses on the question whether proof of defendant's fingerprint, impressed in blood on a flashlight found at the scene of the crimes, was sufficient, when considered with the other evidence offered by the Commonwealth, to establish that defendant was the criminal agent.

During the early morning hours of July 13, 1975, Mrs. Mary Belle Hollingsworth Pond, 82 years of age and living alone, was brutally beaten in an apartment within her own residence in the Town of Waverly; she died about two and one-half months later from the injuries received during the attack.

The record shows that near 5:00 a.m. on the day of the crimes, Mrs. Pond "banged on" the door of another apartment in her home and told the tenants "a man" was in her apartment "trying to beat" her. The victim's face was cut, bloody and swollen, her eyes were blackened, her arms were bloody and bruised, and the nightgown she was wearing "was covered in blood." One of the tenants went at once to the Pond quarters, "looked inside the door", and observed no one there. The victim was then taken to the local police station and from there transported to the Petersburg General Hospital.

Arriving on the scene about 15 minutes after the assault, the town police officers found the rooms in which the victim lived "disturbed" and "tore up", indicating a struggle had taken place. They determined that the assailant gained access to the victim's ground-floor quarters by forcing open the back door after breaking its window and sash. Bloodstains were found on the broken door glass and sash, on the porch outside the back door, on the floor of the victim's bedroom, on her bed sheets and mattress cover and on a desk in another bedroom of the apartment. A bloody and damp "blue jean" jacket, identified in the testimony only as not belonging to the victim, was found in the kitchen. Rain had fallen during the time immediately preceding the assault.

A bloodstained two-cell Eveready flashlight was found in Mrs. Pond's bedroom on the floor between the bed and a nearby wall.

Latent fingerprints, impressed in the blood, were "all over" the flashlight; one such print was later identified upon laboratory examination by a fingerprint expert as that of the defendant's right little finger. The other prints on the flashlight were "fragments and partial prints" which did not have "enough points of identity in [them] to make an identification."

During the afternoon on the day of the crimes, the police arrested the defendant in Waverly. One officer observed a "freshly cut" puncture wound located on the "back" of defendant's arm near the left elbow; defendant was wearing a bloodstained shirt. When arrested, defendant was "stubborn — didn't want to half way cooperate" and denied any knowledge of the events which had occurred earlier at the Pond residence. One of the officers testified:

> "At the time I questioned him, he denied knowing anything about it or going to the house, and I told him that I had some evidence that I was going to submit to the laboratory for latent fingerprints, and he said I could carry anything I wanted to up there, that I won't going to find nothing in there with his prints on it."

In the course of the police investigation a number of other articles found in the victim's apartment were submitted to the State crime laboratory in Richmond for blood analysis and fingerprint examination. Sent for fingerprint examination were items such as a telephone receiver and base, a lamp base, intact and broken soft drink bottles, a dish top and a vase. The fingerprint expert, testifying for the Commonwealth, stated there were unidentifiable prints on many of the foregoing items, but there were some prints which could be identified and they were not the prints of either the defendant or the victim. The record does not reveal that any of the prints, except those on the flashlight, were impressed in blood.

The items submitted for blood analysis included the bed sheets, the mattress cover, the broken door glass, pieces of the wood sash, defendant's shirt, the telephone base and the "blue jean" jacket. Called as a witness for the Commonwealth, the serologist who analyzed the blood on these items testified that the bloodstains on the sheets, on the mattress cover and on the sash matched the victim's blood type and were not consistent

with that of the defendant; the blood on defendant's shirt matched his blood type; the blood on the telephone base was either the blood of a third person or a mixture of the victim's blood and defendant's blood. Tests of the stains on the other articles were inconclusive. There was no evidence to indicate whether or not the flashlight was submitted for blood analysis and, if so, to show the results of such analysis. The serologist also testified that while handling the jacket, she noticed small particles of glass adhering to a sleeve and a cuff.

The defendant did not testify. The only evidence presented on his behalf was the testimony of an acquaintance. She stated that some time during the night in question, when it was "dark", defendant came to her home and upon his request, she permitted him to "come in out of the rain." He then fell asleep in a chair and, according to the witness, "went home" after daybreak.

Defendant argues the evidence against him was "totally and completely circumstantial in nature; no witness identified the [defendant] as a participant in the crime, no witness identified him as being in the vicinity at or near the time that the crime was committed, nor were any fruits of the crime found in his possession or control". Contending the sole basis for linking him with the crimes was the fingerprint on the flashlight found at the scene, defendant urges that such evidence was insufficient to convict. He maintains the fact that the print was in unidentified blood on the flashlight discovered at the scene of the crime has "little or no probative value in that the Commonwealth offered no evidence as to who had possession or control of the flashlight at any time prior to the crime, whether the flashlight was used during the commission of the crime, or the age of the fingerprints." In sum, he urges that "[a] fingerprint on a readily movable object in common usage found at the scene of a crime, absent more, is insufficient to prove the criminal agency of the defendant beyond a reasonable doubt."

While the Commonwealth's case was founded on circumstantial evidence, the "essence" of the case, as the Attorney General observes, was the defendant's fingerprint impressed in blood on the flashlight discovered in the victim's bedroom. But, the rule is that circumstantial evidence is as competent and is entitled to the same weight as direct testimony, provided it is of such convincing character as to

exclude every *reasonable* hypothesis other than that the accused is guilty. We think this evidence meets that standard.

The defendant relies upon fingerprint cases from the federal courts and from other jurisdictions, but we need not search afield for guidance. The principles enunciated in *Avent* v. *Commonwealth*, 209 Va. 474, 164 S.E.2d 655 (1968) control the disposition of this case.

In *Avent*, we affirmed a statutory burglary conviction upon evidence of defendant's fingerprint on a piece of broken window glass found inside the burglarized premises. The bottom casement of the window was seven feet from street level. We decided the trial court could have properly concluded that incident to gaining entry into the building, the window pane was broken and that the window, because of its height above ground level, would not normally be accessible to the general public or to the defendant, who was not and had never been an employee of the business which was burglarized. We concluded that because of the mode of entry, the location of the window, and the positive identification of the print on the broken pane, a rational inference arose that defendant was at the scene unlawfully, that he entered the premises at the time charged, and that he stole the goods. There, direct evidence proving the *corpus delicti* of the crime was linked with the fingerprint evidence, which established that defendant was one of the criminal agents, to support the conviction.

In *Avent*, we recognized that finger printing is known to be a certain and scientific method of identification; a fingerprint is actually "an unforgeable signature", 209 Va. at 478, 164 S.E.2d at 658. But, there we said, citing *Lawless* v. *State*, 3 Md. App. 652, 241 A.2d 155 (1968), that while defendant's fingerprint found at the scene of the crime may be sufficient under the circumstances to show defendant was there at *some time*, nevertheless, in order to show defendant was the criminal agent, such evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. 209 Va. at 479, 164 S.E.2d at 659. Such "other circumstances," we said, "need not be circumstances completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to

the object on which the print was impressed." *Id.* Those attendant circumstances may demonstrate the accused was at the scene of the crime when it was committed. And if such circumstances do so demonstrate, a rational inference arises that the accused was the criminal agent. 209 Va. at 480, 164 S.E.2d at 659.

■ Applying these principles to the facts of this case, we hold the evidence was legally sufficient to permit the trier of the facts to find beyond a reasonable doubt the defendant committed the crimes of which he was convicted. The significant fact in this case, which distinguishes it from all the fingerprint-on-movable-object cases cited by defendant, is that here, a crime of violence is involved and the print was *impressed in blood* on the movable object, the flashlight. Considering the early morning hour of the attack, the disarray of the bedroom, the bloody sheets and mattress cover, and the attire of the victim when she fled her assailant, the struggle obviously began in Mrs. Pond's bedroom and centered in and around her bed. Found near the bed on the floor was the flashlight; it was covered "all over" with blood; the defendant's fingerprint in the blood was positively identified. Therefore, a logical — even compelling — inference from this evidence is that the defendant was at the scene at the very time these crimes were committed. For another case involving a fingerprint, impressed in blood, found on a movable object, see *State* v. *Phillips,* 15 N.C. App. 74, 189 S.E.2d 602, *cert. denied* 281 N.C. 762, 191 S.E.2d 359 (1972) (defendant's bloody fingerprint impressed on a toaster sufficient to sustain convictions for larceny and breaking and entering an appliance store). *Cf. State* v. *Kuhl,* 42 Nev. 185, 175 P. 190 (1918) (bloody palm print on envelope properly admitted to support a conviction for murder of a mail coach driver).

■ The defendant complains of the lack of evidence to show the analysis of the blood on the flashlight; of the Commonwealth's failure to prove who owned or controlled the flashlight prior to the crimes; of the failure to show whether the flashlight was one of the murder weapons; and of the failure to establish the age of the fingerprint. These specific proofs were not vital to the Commonwealth's case under these circumstances. Within 15 minutes of the assault, the police found evidence of a recent entry to the premises and a recent struggle. The struggle had been followed by an immediate

request for help by the victim who showed the effects of the recent beating. The reasonable inferences from this evidence are that the bloodstains were fresh, that the fingerprint was recently made, and that the blood was from either the victim or the assailant. With proof of these facts, it was immaterial who owned the flashlight or precisely whose blood was on it or whether the device was a murder weapon.

Thus, in this case we have, coupled with the evidence of defendant's fingerprint, those "other circumstances", discussed in *Avent,* sufficient to create a rational inference that the defendant was the criminal agent in both crimes.

Finally, defendant contends "the Commonwealth has failed to exclude the hypothesis that the fingerprint on the flashlight was impressed at a time other than that of the crime"; he argues the burden was on the prosecution to show the "print could have been impressed only during the commission of the crime." But the prosecution is not required to *affirmatively* and *conclusively* prove to a *certainty* that the print *could not* have been made other than at a time when the crime was committed. As we noted in *Avent,* the fingerprint evidence need be joined only with evidence of other circumstances tending to *reasonably* exclude the hypothesis that the print was made at some other time than during commission of the crime. 209 Va. at 480, 164 S.E.2d at 659. And the hypotheses which must be reasonably excluded are those which flow from the evidence itself, and not from the imagination of defendant's counsel. *Compare Williams* v. *Commonwealth,* 212 Va. 818, 188 S.E.2d 79 (1972). At the bar, it was argued on defendant's behalf that the bloody print on the flashlight could have been placed there during a hunting trip when the defendant may have dressed his prey and that, thereafter, the item somehow may have found its way into the victim's room with defendant's fingerprint impressed in animal blood, and that the Commonwealth had to exclude that hypothesis. Such a contention has no merit. "While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court cannot supply evidence that is lacking." 209 Va. at 480, 164 S.E.2d at 659. Under these facts, the hypothesis urged by defendant does

not spring from the evidence and the Commonwealth had no duty to negate it.

For these reasons the judgments of conviction will be

*Affirmed.*