Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, and Keenan, JJ., and Poff, Senior Justice

WILLIAM L. TYLER

OPINION BY
v.  Record No. 961873                SENIOR JUSTICE RICHARD H. POFF
                                          June 6, 1997
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

The dispositive issue framed in this appeal from convictions of statutory burglary and grand larceny is whether the evidence was sufficient to identify the appellant as the criminal agent.

Convicted of both offenses in a bench trial conducted in the Circuit Court of the City of Alexandria, William Lee Tyler was sentenced to serve ten years in prison for each conviction. The two terms were fixed to run concurrently with five of the ten years suspended during good behavior. Finding "no reasonable hypothesis of innocence flowed from the evidence before the trial court", Tyler v. Commonwealth, 22 Va. App. 480, 486, 471 S.E.2d 772, 774 (1996), the Court of Appeals affirmed the convictions, and we awarded Tyler this appeal.

Roger Wall, owner of Granny's Place Too, a discount children's clothing and toy store, testified that he closed the store about 2:15 p.m. on Saturday, September 4, 1993. Responding to a call that "[t]here had been a break-in", he returned to the store the next morning at 9:30 to find the plate-glass window situated just above the sidewalk shattered and 86 pieces of children's clothing missing from a display rack. He estimated the value of the clothing at "$4,400 and some-odd, retail." Wall denied that Tyler had been "an employee of [his] store" or had

"any business or reason to be in or at [his] store."  Asked on cross-examination if he had found "glass both on the inside of the store and on the street", Wall replied, "Well, not on the street, on the sidewalk."

Cleveland Ratcliffe, an "evidence technician" with the Alexandria Police Department, identified exhibits 1A through 1F, photographic copies of latent fingerprints, as those he had "collected" from glass sections found "at the base of the point of entry".  "Most of the lifts obtained," he said, "were fingerprints on both sides, as if someone had picked it up like this and set it aside."  Asked on cross-examination whether those pieces of glass were "found on the inside or the outside of the store", Ratcliffe replied:  "It was found at the base of the window.  Actually some was leaning on the inside and some was on the outside."  He acknowledged that the six exhibits did not disclose "which pieces were which".

Ratcliffe delivered the fingerprints for analysis to Wanda Sue McCall, the department's latent print examiner.  McCall testified that she had compared them to a "known ink print of William Lee Tyler"; that she "was able to count at least 75 points [of identification]"; and that she was "[o]ne hundred percent positive" that the prints reflected in the six exhibits were those left by Tyler.  Five of the six revealed fingerprints on opposite sides of the pieces of glass recovered.  Shown one of these exhibits, the witness identified the defendant's right

thumb print on one side and his right index print on the other.

Tyler's motion to strike the Commonwealth's evidence was denied, and the defendant rested. The trial judge found that defense counsel's theories concerning the fingerprint evidence were "pure hypothesis and speculation" raising "no reasonable doubt" of Tyler's guilt. A pre-sentence report was filed, sealed, and incorporated in the record. The trial judge entered final judgment, and the defendant perfected his appeal.

Here, as in the courts below, Tyler maintains that the fingerprint evidence was the only evidence adduced against him, that the Commonwealth's evidence failed to exclude reasonable hypotheses of innocence and, therefore, that the evidence was insufficient to prove that he had broken the window and stolen the clothing. Specifically, Tyler contends on brief as follows:

> Although the defense is not required to explain why any one might innocently pick up and set aside broken glass, potential explanations flowed naturally from the circumstances of this case. For example, broken glass was shown to have been scattered across a city sidewalk on a summer weekend: any pedestrian (drunk, sober, or naturally clumsy) might have fallen amidst the broken glass and needed to clear space in order to arise by pushing off against the ground. Anyone walking barefoot on such a summer day might have picked up the glass in order to avoid the broken glass – or to avoid the necessity of detouring onto the hot tarmac of a city street. Even idle curiosity could innocently and plausibly explain why someone would have picked up broken glass lying on a city sidewalk in front of a store with an eye-catching, broken window. In any of these instances, the base of the window would seem to be the most logical place to set the glass fragments down again.

Concerning the several hypotheses Tyler posits,[*] we look to the principles of law defined and applied in Avent v. Commonwealth, 209 Va. 474, 164 S.E.2d 655 (1968), and its progeny.

The facts and circumstances in Avent were similar to those at bar. Avent was convicted in a bench trial of statutory burglary involving larceny of 176 pieces of clothing stored in a warehouse. One of his fingerprints had been lifted from one piece of glass found on basement steps located inside the warehouse below a window broken to gain access to the building. Indeed, the only incriminating circumstance in Avent absent here was that the broken window in Avent, located seven feet above ground level, was generally inaccessible to a pedestrian. Yet, as in the present case, the evidence showed that the defendant had no employment or other relationship justifying his presence in or around the premises.

As stated in Avent, the applicable standard of review provides as follows:

> We must review the evidence in this case not with respect to what action we might have taken, but as to whether the evidence justified the trial judge, as a

---

[*]In support of another hypothesis urged below that the window had been broken from the inside by the storeowner, Tyler contends that there was no evidence of glass pieces found inside the building and that the Court of Appeals erred in declaring otherwise. Obviously, the Court of Appeals relied upon the reasonable import of Ratcliffe's testimony that the pieces containing fingerprints on both the inside and outside surfaces were found at the base of the window and that "some was leaning on the inside and some was on the outside." And McCall identified Tyler as the person who left those fingerprints.

trier of the facts, in finding defendant guilty.  It is
our duty to regard as true all the credible evidence
favorable to the Commonwealth and all fair inferences
to be drawn therefrom.  When such evidence leads to the
conclusion of guilt beyond a reasonable doubt, and
excludes every reasonable hypothesis of innocence, it
is sufficient to support a finding of guilty.  This
Court will affirm the judgment of the trial court
unless 'it appears from the evidence that such judgment
is plainly wrong or without evidence to support it.'
Code § 8-491 [now, Code § 8.01-680].

Id. at 477, 164 S.E.2d at 657.

Applying that standard in Turner v. Commonwealth, 218 Va.
141, 235 S.E.2d 357 (1977), we said that

while defendant's fingerprint found at the scene of the
crime may be sufficient under the circumstances to show
defendant was there at some time, nevertheless in order
to show defendant was the criminal agent, such evidence
must be coupled with evidence of other circumstances
tending to reasonably exclude the hypothesis that the
print was impressed at a time other than that of the
crime.  Such 'other circumstances,'. . . 'need not be
circumstances completely independent of the
fingerprint, and may properly include circumstances
such as the location of the print, the character of the
place or premises where it was found and the
accessibility of the general public to the object on
which the print was impressed.'  Those attendant
circumstances may demonstrate the accused was at the
scene of the crime when it was committed.  And if such
circumstances do so demonstrate, a rational inference
arises that the accused was the criminal agent.

218 Va. at 146-47, 235 S.E.2d at 360 (citations omitted).

The Commonwealth always bears the burden of proving guilt

beyond a reasonable doubt.  When the Commonwealth relies solely

upon fingerprint evidence to identify a criminal agent, it bears

the burden of excluding every reasonable hypothesis of innocence,

that is, those "which flow from the evidence itself, and not from

the imagination of defendant's counsel."  Id. at 148, 235 S.E.2d

-5-

at 361.  See also Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 972 (1997); Goins v. Commonwealth, 251 Va. 442, 467, 470 S.E.2d 114, 130, cert. denied, 519 U.S. ___, 117 S.Ct 222 (1996); Graham v. Commonwealth, 250 Va. 79, 85-86, 459 S.E.2d 97, 100, cert. denied, 516 U.S. ___, 116 S.Ct. 535 (1995); Tuggle v. Commonwealth, 228 Va. 493, 511, 323 S.E.2d 539, 550 (1984), vacated on other grounds, 471 U.S. 1096, aff'd on remand, 230 Va. 90, 334 S.E.2d 838 (1985), cert. denied, 478 U.S. 1010 (1986); Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983); Black v. Commonwealth, 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981); Ricks v. Commonwealth, 218 Va. 523, 527, 237 S.E.2d 810, 812 (1977).

We are of opinion that the fingerprint evidence disclosing Tyler's presence at the scene of the crime was "coupled with evidence of other circumstances tending to reasonably exclude" the defendant's several hypotheses that his presence and his handling of the pieces of broken glass were unrelated to the commission of that crime.

As the record shows, Tyler had never been an employee of the store and had no "business or reason" to be present there.  As in Avent, that circumstance reinforces the inference raised by the fingerprint evidence.

Another such circumstance is detailed in the testimony of the officer who discovered Tyler's fingerprints on opposite sides

-6-

of glass fragments.  That discovery supports an inference that the person who broke the window pulled the fragments out of the window frame to avoid cuts as he crawled inside the store.

Finally, for any number of reasons, an innocent person might pick up a piece of glass lying on a sidewalk, examine it, and discard it.  But would such a person pick up the piece of glass, carry it to a building adjacent to the sidewalk, and lean it inside or outside against the base of the broken window from which it fell?  If so, is it reasonable to conclude that such a person would repeat that process with <u>six</u> pieces of broken glass, leaving the remaining pieces scattered on the sidewalk?

We think not.  Applying the standard of review and the principles defined in consistent precedent, we hold that the fingerprint evidence adduced here, coupled as it was with attendant circumstances, was sufficient to support the trial judge's finding of fact that Tyler was the criminal agent, and we will affirm the judgment of the Court of Appeals upholding the convictions.

<u>Affirmed</u>.