COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Coleman and
          Senior Judge Duff
Argued at Alexandria, Virginia


DANIEL BIZZOCO
                                              OPINION BY
v.   Record No. 0604-97-4            JUDGE CHARLES H. DUFF
                                            JUNE 16, 1998
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
              William G. Plummer, Judge Designate

         John M. Tran (David S. Bracken; Greenberg,
         Bracken & Tran, P.C., on briefs), for
         appellant.

         Richard B. Smith, Assistant Attorney General
         (Richard Cullen, Attorney General, on brief),
         for appellee.



     Daniel Bizzoco appeals his conviction for burglary and grand

larceny.  He contends the evidence was insufficient to prove he

entered the burglarized townhouse.[1]  We disagree and affirm.

---

[1]In his brief, appellant also contends the evidence was
insufficient to prove he entered in the nighttime.  Appellant was
indicted for violating Code § 18.2-89, common law burglary, an
element of which is that the entry occur in the nighttime.
     In the final order of conviction, the trial court pronounced
that appellant was "convicted of two felonies, to-wit:  Count
One:  Statutory Burglary and Count Two:  Grand Larceny."  The
Sentencing Guidelines prepared by the probation officer listed
the "Primary Offense" as "Stat. Burglary" and referenced Code
§ 18.2-91, the statutory burglary code section.
     Common law burglary is a Class 3 felony punishable by a term
of imprisonment for a minimum of five years and a maximum of
twenty years. See Code §§ 18.2-10, 18.2-89.  Statutory burglary
is punishable by a term of imprisonment "for not less than one or
more than twenty years or, in the discretion of the jury or
[judge sitting] without a jury, be confined in jail for a period
not exceeding twelve months."  Code § 18.2-91.  The trial judge
imposed a three-year sentence for the burglary conviction,
suspending imposition of all three years.
     At oral argument, appellant's counsel conceded that

I.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

So viewed, the evidence proved that Claudia Zarikow and Maria Gillespie shared a townhouse apartment at 1426 Woodbine Street in the City of Alexandria. Zarikow and Gillespie went upstairs to bed around 11:00 p.m. on June 10, 1996. At that time, the doors were locked; however, they left a downstairs window ajar about six to eight inches. Zarikow testified that, when she arrived downstairs the next morning, June 11, she noticed the window open all the way and that the screen had been removed and was leaning against the inside wall. Zarikow's laptop computer and school bag were missing.

While identifying a photograph of the exterior of her townhouse apartment, Zarikow was asked, "[W]hat, if anything, unusual did you notice about the area around the window?" Zarikow replied, "Well, I had planted plants here. In the morning, these were trampled because somebody had been trying to enter. In this [photograph], you can see [the plants] are crooked there."

Maria Gillespie corroborated much of Zarikow's testimony.

appellant was convicted and punished for statutory burglary and that the nighttime element was no longer an issue on appeal. Therefore, we do not address that issue.

Gillespie's "bag" containing personal property was also missing.

Darrell Linville, a fingerprint expert, examined latent fingerprints found outside of the window. Linville testified that the prints were those of appellant. The police examined the interior of the residence and recovered no fingerprints belonging to appellant.

Detective Robert Hickman interviewed appellant as part of his investigation of the burglary. Hickman telephoned appellant, and appellant agreed to meet with Hickman. Hickman met with appellant outside appellant's apartment building. Hickman identified himself and "asked [appellant] to speak with [him] concerning the burglary [he] was investigating on Woodbine Street." Hickman provided the following testimony:

> [Appellant] said he didn't know where that was. And I explained to him where it was by pointing out the area. North Quaker Lane [appellant's apartment building location] was fairly, you know, where we were at, the 1200 block, was very close to Woodbine. I told him it was behind Lindsay Cadillac and where the 7-Eleven is there, the 1600 block of North Quaker Lane.
> And [appellant] acknowledged that he understood where I meant. And I asked him had he been back there, and he said, no, he doesn't go back there. I asked him if there was any reason why anyone would say they saw him or that his finger prints would be on Woodbine Street, and he said, no.

Hickman then "handed" appellant a supplementary police report containing Linville's confirmation that appellant's "latents [fingerprints] were lifted from exterior P.O.E. window." After reading the report, appellant stated, "there is a mistake,

that's not me."  Appellant also stated that "he had been home that night."  Hickman denied telling appellant that the burglary occurred at night, and he testified as follows:

> I asked [appellant], what night was that?
> Knowing that I hadn't asked him or advised
> him of the date of the offense.  I do that
> purposely, so later if the interrogation is
> claimed to have been, you know, fed by me, I
> can say, he gave me the date or a close date
> to the offense, and I hadn't given it to him.
>     So I knew at that point when he said,
> that night, that I hadn't given him the date.
>  And he said, the night that you are talking
> about.

Although dated, the supplementary report contained no offense date for the burglary.  None of the stolen goods were recovered.

## II.

> "[W]hile defendant's fingerprint found at the
> scene of the crime may be sufficient under
> the circumstances to show defendant was there
> at some time, nevertheless in order to show
> defendant was the criminal agent, such
> evidence must be coupled with evidence of
> other circumstances tending to reasonably
> exclude the hypothesis that the print was
> impressed at a time other than that of the
> crime.  Such 'other circumstances,' . . .
> 'need not be circumstances completely
> independent of the fingerprint, and may

properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed.' Those attendant circumstances may demonstrate the accused was at the scene of the crime when it was committed.  And if such circumstances do so demonstrate, a rational inference arises that the accused was the criminal agent."

Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997) (quoting Turner v. Commonwealth, 218 Va. 141, 146-47, 235 S.E.2d 357, 360 (1977) (citations omitted)).

> The Commonwealth always bears the burden of proving guilt beyond a reasonable doubt. When the Commonwealth relies solely upon fingerprint evidence to identify a criminal agent, it bears the burden of excluding every reasonable hypothesis of innocence, that is, those "which flow from the evidence itself, and not from the imagination of defendant's counsel."

Id. (quoting Turner, 218 Va. at 148, 235 S.E.2d at 361).

Here, the fingerprint evidence confirming appellant's presence at the scene of the crime was "coupled with evidence of other circumstances tending to reasonably exclude" appellant's hypothesis that his presence at the crime scene was unrelated to the commission of that crime.  As the record showed, appellant

denied knowledge of the townhouse location.  After Detective Hickman described in detail the location, appellant "acknowledged that he understood where [Hickman] meant."  Appellant denied he had ever been to the townhouse and was unable to explain why his fingerprints would be found there.  As in Tyler, "that circumstance reinforces the inference raised by the fingerprint evidence."  See id. at 167, 487 S.E.2d at 224.  Moreover, when confronted with the police report unequivocally indicating the presence of appellant's fingerprints, appellant said it was a mistake, and he again failed to provide any explanation for their presence.  Finally, in denying any involvement with the crime, appellant disclosed his knowledge that the crime had been committed at night, a fact which, to that point in the police interview of appellant, had not been revealed.

Another such circumstance is detailed in the testimony of Zarikow, who testified that she had planted flowers below the window, but when she awoke on the morning of June 11, 1996, the plants "were trampled."

We hold that the fingerprint evidence and the other evidence of the attendant circumstances were sufficient to support the trial judge's finding that appellant was the criminal agent. Accordingly, we will affirm the judgment of the trial court.

Affirmed.