COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Alston
Argued at Richmond, Virginia

PUBLISHED

ANDREW VOJUAN BURROUS

                                         OPINION BY
v.      Record No. 0022-17-2      JUDGE RANDOLPH A. BEALES
                                         DECEMBER 12, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Sarah L. Deneke, Judge

Christopher M. Reyes (Spencer, Meyer, Koch & Cornick, PLC, on
brief), for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


At the conclusion of a bench trial, Andrew Vojuan Burrous ("appellant") was convicted of

two counts of robbery, one count of attempted robbery, and one count of wearing a mask in public.

On appeal, appellant argues that the evidence was insufficient "to find Appellant guilty when the

only identification of Appellant was through the use of DNA evidence."  We disagree with

appellant's argument and characterization of the evidence, and we affirm appellant's convictions for

the following reasons.

BACKGROUND

Viewing the evidence in the light most favorable to the Commonwealth, as we must since

it was the prevailing party in the trial court, Riner v. Commonwealth, 268 Va. 296, 330, 601

S.E.2d 555, 574 (2004), the evidence at trial established that Karen Moore was a store manager

at a Dollar Tree store in Fredericksburg, Virginia.  On September 5, 2015, at around 10:20 or

10:30 p.m., Moore was walking out of the Dollar Tree with a coworker and the coworker's

boyfriend, when two men came running out of the woods toward her. She managed to get into her car and shut the door. One of the men wrestled the door open before she could lock it, but Moore was able to push him back and then close and lock the door, securing herself and her belongings inside her vehicle.

At that point, the men walked toward Moore's coworker, April Brown, and her boyfriend, Jerome Barnes. One of the robbers wrestled with Brown as he ripped off her backpack. The robbers were also successful in taking Barnes's wallet and a Dollar Tree bag containing some food and sodas. One of the assailants came back to Moore's car, and attempted to break the window. He hit it forcefully enough to break the plastic rain guard. Ultimately, the two men ran away toward a pond and a wooded area, in the direction of a Sport and Health fitness center.

Following the incident, the police were called out to the Dollar Tree. A police canine, who was "trained to track narcotics and scent apprehension," was used in an attempt to locate evidence. Deputy Sheriff William Wright, the canine handler, testified that the dog was "looking for the freshest stream of odor." Wright testified that the dog led him around the retention pond and around a dumpster at the back side of the Sport and Health. Within fifteen feet of the dumpster, the dog located a black and white cloth bandana. The dog also located a white Dollar Tree plastic bag behind the Sport and Health, and a grey sweatshirt in the pond. The police also recovered a black face mask on the brick ledge encompassing the dumpster.

The Commonwealth produced certificates of analysis from the Department of Forensic Science, the accuracy of which appellant did not dispute. On the certificate of analysis of the bandana, the results stated, "A DNA profile was developed from the bandana. This profile was searched against the Virginia DNA Data Bank and found to be consistent with the following individual: Name: Andrew V. Burrous." In contrast, the analysis of the mask resulted in the

development of a major profile and a minor profile. It stated, "A DNA mixture profile was developed from the interior face area of the mask. The major profile developed from this mixture was searched against the Virginia DNA Data Bank and no DNA profile consistent with this profile was found." The certificate also noted that the minor profile was not suitable for comparison against the National or the Virginia DNA Data Bank. Another certificate of analysis analyzed buccal swabs from appellant and noted that appellant:

> cannot be eliminated as a contributor of the DNA profile previously developed from the bandana . . . . The probability of selecting an unrelated individual with a DNA profile matching that developed from the bandana at the PowerPlex® 16 loci is 1 in greater than 7.2 billion (which is approximately the world population) in the Caucasian, Black and Hispanic populations.

At trial, Barnes testified that one of the robbers was wearing a bandana while the other was wearing "a ski mask or something." The Commonwealth introduced a photograph of the bandana the police canine found at the scene and asked Barnes, "Is that the bandana you saw that night?" to which Barnes responded, "Yes." The same photograph was shown to Brown, and she also testified that the bandana in the photograph was the one worn by the individual who grabbed her backpack. Brown repeated her testimony on cross-examination. Defense counsel asked, "Are you sure this is the bandana that was worn?" to which Brown responded, "It was worn across his face." Sergeant Mary Mason, the primary detective assigned to the robbery, was also shown this photograph of the bandana, and she confirmed it was the bandana the police found on the night of the robbery.

Also introduced were photographs of appellant printed from a Facebook page, several of which also featured a bandana.

The trial court ultimately found that the Commonwealth had proven that Burrous committed the offenses. In coming to this conclusion, the trial court found that the bandana recovered was the one used to commit the robbery because the police canine found it by directly

- 3 -

tracking it from the scene of the robbery to a nearby area where other items identified in the robbery were found and because two of the victims testified that it was the bandana used in the robbery. The trial court also found that the only DNA on the bandana was that of appellant.

ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "We must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

The only issue in this case is whether the evidence is sufficient to prove that appellant was one of the robbers. Appellant contends that our decision in this case is controlled by Jennings v. Commonwealth, 67 Va. App. 620, 798 S.E.2d 828 (2017). In Jennings, this Court reversed a robbery conviction against Calvin Donnell Jennings because the evidence was insufficient to prove that he was the perpetrator of the robbery. Id. at 628, 798 S.E.2d at 832.

Jennings was convicted of robbing a Carolina BP gas station and convenience store. Id. at 623, 798 S.E.2d at 829. On the day of the robbery, a person entered the store wearing a black stocking cap, a blue hooded sweatshirt, black jeans, a scarf wrapped around his face, gloves, and sunglasses. Id. Because his identity was shielded by the clothing, the store clerk could not

provide a physical description other than that he was "tall" and "slim." Id. at 623, 798 S.E.2d at 830. The perpetrator threatened the clerk with a knife and stole $38 from the cash register. Id.

When the police arrived at the scene, a police dog located a brown bag at the back of the store and several $5 bills. Id. The dog then alerted on a stocking cap and a scarf found close together on a wooded path near the store. Id. at 624, 798 S.E.2d at 830. A hooded sweatshirt was found approximately ten feet off the path. Id. The police also located a knife approximately twenty to twenty-five yards from the path. Id. When shown photographs of the recovered items, the clerk identified them as items used by the perpetrator during the robbery. Id.

DNA was collected from the stocking cap, the scarf, the knife, and the hooded sweatshirt. Id. Each item contained DNA from more than one individual. Id. The hooded sweatshirt contained "a combination of DNA from multiple individuals, resulting in a profile 'too complex'" for any conclusions to be made. Id. The stocking cap and the scarf also contained a mixture of DNA, but the testifying forensic scientist determined that "Jennings was the 'major contributor' of DNA on both of those items, meaning his DNA was the most prominent on them." Id. DNA was also recovered from the knife, and "Jennings' DNA mixture represented about half of that present on the knife." Id.

On appeal, Jennings argued that the evidence only established that he came into contact with these items at some point, but it did not establish that he was the individual wearing or using them at the time of the robbery. Id. at 626, 798 S.E.2d at 831. Agreeing with Jennings and reversing the conviction, this Court stated, "[T]he evidence at best is legally in equipoise, because it equally supports a conclusion that the unknown contributor of DNA is just as likely as Jennings to have been the wearer of the clothing and possessor of the knife, and therefore, the robber." Id. at 627, 798 S.E.2d at 832.

Similarly, appellant urges us to hold that a rational factfinder could not conclude that appellant was the robber because the evidence only proves appellant wore the bandana at some point, but there was no evidence that he wore it at the time of the robbery. Appellant argues that the Facebook photographs support his conclusion because they show other individuals coming into contact with the bandana. He argues the evidence did not exclude the hypothesis that "someone else featured in the photographs had access to a bandana that Appellant had touched and then used this bandana in committing these crimes." We disagree.

The present case differs from <u>Jennings</u> because, unlike in <u>Jennings</u>, where multiple DNA profiles were identified, the DNA analysis of the bandana here showed that DNA of only one individual – appellant – was on the bandana, and the certificate of analysis stated that the "probability of selecting an unrelated individual with a DNA profile matching" the one developed was approximately 1 in greater than 7.2 billion. The factfinder could infer that no other DNA was present on the bandana because, unlike with the mask, where a minor profile was also developed, no other DNA profiles were developed from the bandana. Unlike in <u>Jennings</u>, where it was quite possible that another individual whose DNA was found on the items used in the robbery was the assailant, there is no other DNA here to suggest that another individual wore the bandana during the robbery.

The evidence also supports the trial court's conclusion that the bandana located by the dumpster, and containing appellant's DNA, was the bandana worn in the commission of the robbery. Shortly after arriving at the scene, the police canine located the bandana, the Dollar Tree bag, and the sweatshirt – all at places in the direction that the robbers had just fled. In addition, both Barnes and Brown testified that the bandana found near the dumpster was the bandana that the individual who robbed them was wearing. Because the bandana located by the police was the bandana used to commit the robbery and appellant's DNA was the only DNA

found on the bandana, the evidence was sufficient for a rational factfinder to conclude that appellant was the robber.

In addition to his reliance on <u>Jennings</u>, appellant also argues that we should view the DNA evidence in this case in a similar manner as fingerprint evidence. In <u>Tyler v. Commonwealth</u>, 254 Va. 162, 487 S.E.2d 221 (1997), the Supreme Court explained, "When the Commonwealth relies solely upon fingerprint evidence to identify a criminal agent, it bears the burden of excluding every reasonable hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" <u>Id.</u> at 166, 487 S.E.2d 223 (citing <u>Turner v. Commonwealth</u>, 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977)). In <u>Tyler</u>, the defendant's fingerprints were found on pieces of a store's broken plate glass window during an investigation of a burglary at the store. <u>Id.</u> at 164, 487 S.E.2d at 222. The defendant claimed there were innocent reasons that might explain why his fingerprints were on the glass. For example, he argued that a curious individual might pick up broken glass in front of an "eye-catching, broken window." <u>Id.</u> at 165, 487 S.E.2d at 222. However, the Court rejected the defendant's alternate theories.

> [W]hile defendant's fingerprint found at the scene of the crime may be sufficient under the circumstances to show defendant was there at *some time*, nevertheless in order to show defendant was the criminal agent, such evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime. Such "other circumstances,". . . "need not be circumstances completely independent of the fingerprint, and may properly include circumstances such as the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed." Those attendant circumstances may demonstrate the accused was at the scene of the crime when it was committed. And if such circumstances do so demonstrate, a rational inference arises that the accused was the criminal agent.

Id. at 166, 487 S.E.2d at 223 (citing Turner, 218 Va. at 146-47, 235 S.E.2d at 360). In Tyler, there was "evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime," including the fact that the defendant had no reason to be near the store, the evidence supported the conclusion that the glass was moved by the perpetrator to avoid cuts as he crawled inside the window, and the fact that the person who had removed the glass placed it back into the base of the window.

Similarly, here, there are other circumstances tending to exclude the possibility that appellant innocently came into contact with the bandana at another time, such as the evidence that, following the robbery, the police dog tracked the scent of the assailants to the bandana, which was located near the scene of the crime and near other items used in the robbery. In addition, the bandana containing appellant's DNA, which was identified by two victims as the bandana used during the robbery, was not an item accessible to the general public. Thus, the other circumstances in this case reasonably exclude appellant's alternate hypothesis of innocence.

CONCLUSION

In short, the evidence was sufficient for a rational factfinder to conclude that appellant committed the robbery on September 5, 2015. Two of the victims testified that the bandana found in the area near where the robbery occurred was the bandana worn by one of the robbers. The police canine tracked the scent of the robbers from the scene of the robbery to the place where the bandana was located, toward which the robbers had been seen fleeing. Furthermore, the trial court found that appellant's DNA was the only DNA found on the bandana. Given the totality of the circumstances, the trial judge, as factfinder, did not err in finding the evidence sufficient, and we, therefore, affirm appellant's convictions.

Affirmed.