COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, O'Brien and Athey

DARRELL JAMAL BOYD

v.      Record No. 0395-23-1

MEMORANDUM OPINION*
PER CURIAM
MAY 14, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares, Attorney General; Stephen J. Sovinsky, Assistant
Attorney General, on brief), for appellee.

A jury sitting in the Circuit Court of the City of Newport News ("trial court") convicted

Darrell Jamal Boyd ("Boyd") of unlawful wounding and domestic assault and battery of his

girlfriend, Wilicia Evette Woolridge ("Woolridge"). On appeal, Boyd contends that the evidence

failed to prove the requisite intent necessary for his unlawful wounding conviction. Regarding both

convictions, Boyd maintains that the victim's account claiming that Boyd was the aggressor was not

credible. After examining the briefs and record in this case, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a). Finding no error in the trial court's judgment, we affirm Boyd's convictions.

I. BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

At trial, Woolridge testified that on November 26, 2021, she was working on her computer while seated on the sofa in her apartment she shared with Boyd. Boyd then came into the apartment, sat down next to Woolridge, and began "smoking drugs." Boyd commented that Woolridge had changed her clothes and accused her of "having men in the house." When Woolridge laughed at his accusation, Boyd stood, "got in [Woolridge's] face," and began "punching" her "all over." In response, Woolridge covered her face, but Boyd bent over and bit her finger. He threw her onto the coffee table and continued to hit her. When he finally stopped, Woolridge ran to the other side of the room, retrieved her phone, and called her aunt.

Woolridge told Boyd to leave. Instead, Boyd retrieved his firearm and placed it in his waistband. As Woolridge spoke with her aunt, Boyd collected his belongings. During the call, Woolridge made several derogatory comments about Boyd, swearing and calling him a "crackhead." When she hung up, Boyd warned, "Keep calling me a crackhead, I'm going to beat your ass." At some point during the exchange, Boyd pulled his gun from his waistband and cocked it before returning it to his waistband.

Woolridge retorted that, if he hit her again, she was "fighting for [her] life." Boyd "balled up his fists" and punched Woolridge in her face. Woolridge closed her eyes and returned a "couple" of blows before she heard a gunshot. When she opened her eyes, she saw blood "gushing out [her] mouth." She saw Boyd holding the gun and realized she had been shot. As a result, she screamed and ran to the bathroom to deal with the blood flowing from her mouth. Boyd followed and assured her that she was "fine." He then told her not to call the police and offered to take her to the emergency room. Boyd also claimed that the bullet, after exiting her face, had then struck him

"in his side," and he accused Woolridge of shooting him. While "grabbing his left side," Boyd told her that "[he] got shot bad" and that they "need[ed] to hurry up and go." Woolridge denied that she ever held the gun during the encounter and stated that when she looked at Boyd that "[h]e wasn't even bleeding." Woolridge then pushed Boyd aside, ran outside, and asked a neighbor to call the police. Boyd, after running back and forth to his car with his belongings, left the scene.

Woolridge explained to the jury that the bullet entered her mouth, grazed the side of her cheek, broke two back teeth, and exited the opposite side of her mouth. She also denied that she ever reached for the gun or touched it. Although Woolridge admitted she had smoked marijuana before the altercation, she testified that she only had one "smoke." She also denied drinking alcohol that day.

During trial, Boyd agreed that after he entered the apartment that day, he accused Woolridge of cheating on him. He also acknowledged that he was "upset" about it. He testified that after Woolridge "brushed [the accusation] off," he began collecting his possessions in trash bags to leave the apartment. Boyd asserted that Woolridge was on the phone with her aunt during this exchange and began calling him derogatory names. He stated that they began arguing and, after he gathered more of his possessions from the bedroom, Woolridge "block[ed]" him from leaving while in the hall. When Boyd tried to "brush past her," Woolridge "rip[ped] the bags out of [his] hand," cursed at him, and threw his "stuff back into the bedroom." Then Woolridge jumped on his back and scratched him. Boyd then bit her hand and threw her off of his back.

Boyd testified that they continued to fight as he repeatedly attempted to leave the apartment. Eventually, he testified, Woolridge reached for the gun in his waistband. Boyd then hit her arm, knocking the gun to the floor, but it fired. Woolridge continued "swinging" after the gun fired. Upon realizing she was shot, Woolridge ran outside and told bystanders to call the police. Boyd

collected the gun and followed her. He remained outside with her for a couple of minutes but left the scene before the police arrived.

Boyd testified that he was shot in his hand when the gun fired and still bore a scar from the wound. He further stated that he neither pulled a gun on Woolridge nor intended to shoot her. He also denied that he struck the first blow during their altercation. On rebuttal, however, Detective T. Campbell ("Detective Campbell"), testified that Boyd stated in a December 2021 interview that he "introduced the firearm to the altercation." Boyd told Detective Campbell that he was removing the gun from his waistband when it "went off," wounding Woolridge. Boyd also never told Detective Campbell that he was shot or that Woolridge had tried to grab his gun.

At the conclusion of the evidence, Boyd renewed his motion to strike the unlawful wounding charge, asserting that the evidence failed to prove he intended to maim, disfigure, disable, or kill Woolridge. With respect to the assault and battery charge, he conceded that there was a credibility contest, noting "we . . . have two different stories at this point." Nevertheless, he asserted that the Commonwealth had "not borne [sic] their burden," and submitted the motion to the court. The trial court noted that while there were "credibility issues and credibility decisions" for the jury to make, that there was "sufficient evidence that a reasonable juror" could assess for the unlawful wounding charge as well as the domestic assault and battery and denied the motion. The jury found Boyd guilty of unlawful wounding and assault and battery of a family member. Boyd appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself

whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The evidence was sufficient to prove Boyd was guilty of unlawful wounding and domestic assault and battery.*

Boyd asserts that the evidence was insufficient to prove unlawful wounding because it failed to establish that he intended to maim, disfigure, disable, or kill Woolridge. Citing his own testimony, he denies that he pulled the gun from his waistband and maintains that it fired only after Woolridge reached for it during their struggle. Boyd also stresses that Woolridge's eyes were closed when the gun fired, leaving room for the possibility that she was shot accidentally. Moreover, he contends that Woolridge had been smoking marijuana and drinking and, as she was "mad" at him, she "may have falsely claimed that [he] initiated an attack on her person and shot her." Further, Boyd notes that Woolridge admitted she threatened to shoot others and herself at the hospital after the incident. He emphasizes that "[t]here were not corroborating witnesses to the altercation who corroborated Woolridge's version of events." Thus, Boyd maintains that the Commonwealth failed to exclude reasonable hypotheses of innocence with respect to both charges.[1] For the following reasons, we disagree.

---

[1] Boyd cites various legal authorities on the right to use self-defense in his brief. To the extent that Boyd asserts that he acted in self-defense, he never presented that argument to the trial court in his motion to strike. Accordingly, he failed to preserve it. Rule 5A:18.

To satisfy its burden of proof, the Commonwealth must exclude "every *reasonable* hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997) (quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). This "reasonable-hypothesis principle," however, "is not a discrete rule unto itself" and "the principle 'does not add to the burden of proof placed upon the Commonwealth in a criminal case.'" *Vasquez*, 291 Va. at 249-50 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). The Commonwealth need not "negate what 'could have been' or what was a 'possibility.'" *Nelson v. Commonwealth*, 281 Va. 212, 218 (2011). Thus, while "a factfinder cannot 'arbitrarily' choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant," an arbitrary choice occurs "only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Vasquez*, 291 Va. at 250. "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Id.* (quoting *Hudson*, 265 Va. at 513).

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Perkins*, 295 Va. at 330 (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). "Circumstantial evidence of intent may include the conduct and statements of the alleged offender." *Adams v. Commonwealth*, 33 Va. App. 463, 471 (2000). "Determining a defendant's intent 'is a factual question, which lies peculiarly within the province of the [fact finder].'" *Barnett v. Commonwealth*, 73 Va. App. 111, 120 (2021) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (en banc)). "It is proper for a [fact finder] to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted in determining whether there is sufficient evidence to prove an intent

to maim, disfigure, disable or kill." *Burkeen v. Commonwealth*, 286 Va. 255, 260-61 (2013). In determining whether a defendant acted with the requisite intent, a "fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998). Moreover, a "fact finder is entitled to draw inferences from those facts proven to be true, so long as the inferences are reasonable and justified." *Cottee v. Commonwealth*, 31 Va. App. 546, 555 (2000). Accordingly, "when a person without any provocation [injures] another with a deadly weapon . . . and thereby maims or disfigures him, he is presumed to have intended to maim or disfigure because that was the natural and probable consequence of his act." *Banovitch v. Commonwealth*, 196 Va. 210, 216 (1954). "Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof." *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Any "[p]otential inconsistencies in testimony are resolved by the fact finder." *Id.* at 292. Such conflicts are not revisited on appeal "unless 'the

evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'" *Id.* (alteration in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). The fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc).

We accept "the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) (quoting *Walker v. Commonwealth*, 258 Va. 54, 71 (1999)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). A rational fact finder is entitled to reject a defendant's self-serving testimony and to conclude that he is lying to conceal his guilt. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011).

Here, viewed in its entirety, the circumstantial evidence adduced at trial supports a rational finder of fact concluding that Boyd assaulted Woolridge and when she resisted, shot her with the intent to maim, disable, disfigure, or kill her. Hence, Boyd's admission that immediately prior to the assault and shooting he was angry with Woolridge, because Boyd believed she was cheating on him, supports the conclusion that he acted while angry in assaulting Woolridge. Moreover, even though Boyd denied striking the first blow, the jury was entitled to reject his denial as self-serving testimony and to conclude that he was lying to conceal his guilt. *Id.* The jury was also entitled to believe Woolridge when she testified that Boyd hit her repeatedly, bit her, and threw her into the coffee table, ceasing his attack only after she called her aunt on the phone. Thus, the jury, which served as the trier of fact here, was entitled to also conclude that Boyd's words and actions placed

Woolridge, his girlfriend whom he lived with, "in fear or apprehension of bodily harm" and that by biting and punching her, he was guilty of domestic assault and battery. *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010). While Boyd acknowledged that there were "different stories" of the events related to the assault and battery, any credibility issues concerning the contradictory testimony of Woolridge and Boyd were to be "resolved by the fact finder." *Towler*, 59 Va. App. at 292.

Woolridge testified that Boyd retrieved his gun during the altercation and cocked it before placing it in his waistband. Although she did not see Boyd fire the gun as they struggled, she denied touching the gun, permitting a rational inference that Boyd pulled the gun from his waistband and fired it at close range with the intent to maim, disfigure, disable, or kill her. Even after Woolridge was seriously wounded, Boyd told her not to call the police and then fled the scene. *See Lucas v. Commonwealth*, 75 Va. App. 334, 347 (2022) (finding that the trial court was entitled to conclude that flight from the scene of a crime is evidence of guilt). Boyd also claimed at trial that he had been shot, despite never mentioning his alleged wound to the police the month after the incident, once again permitting the fact finder to conclude that he was lying, which is additional evidence of his guilt. *See Hawkins v. Commonwealth*, 288 Va. 482, 486 (2014) ("A false account, similar to flight from a crime scene, is a circumstance a fact-finder may properly consider as evidence of guilty knowledge."). These various circumstances, when considered together, were sufficient to prove beyond a reasonable doubt that Boyd was guilty of domestic assault and battery and unlawful wounding. Accordingly, we must affirm Boyd's convictions.

## III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*