COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Causey and White


TAIMON DEMONTE ROBINSON

                                                            MEMORANDUM OPINION[*] BY

v.       Record No. 1740-23-2               JUDGE KIMBERLEY SLAYTON WHITE
                                                           DECEMBER 30, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

(Charles R. Samuels; McCandlish Holton, PC, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Elizabeth Kiernan Fitzgerald,
Assistant Attorney General, on brief), for appellee.


Following a jury trial, Taimon Demonte Robinson was convicted of first-degree murder and

use of a firearm during the commission of a felony. On appeal, Robinson argues that the trial court

erred by denying his motion to strike the evidence because the Commonwealth failed to prove he

acted with premeditation.[1] After examining the briefs and record in this case, the panel

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] In his sole assignment of error, Robinson asserts that the trial court erred "in its interpretation of 'premeditation' case law, code sections, and other law when it denied" his motions to strike. He does not develop this argument in his brief nor explain in what way the trial court allegedly misinterpreted the law. Rule 5A:20(e) requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. Of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). The appellate court "is not a depository in which the appellant may dump the burden of argument and research" and thus, "[s]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008)); *Turner v. Commonwealth*, 67 Va. App. 46, 61 (2016) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992)).

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the judgment of the trial court.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of Robinson's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On July 10, 2021, J'Khari Smith, Jeff Swiney, and Kemondre Claiborne planned to attend a party outside of Richmond, but when they arrived, the party had already ended. Instead, they went downtown to a bar but could not enter because they were underage. Robinson was Smith's sister's boyfriend. Swiney told Smith that he saw Robinson. When Smith turned around, he confirmed that Robinson was there. Smith stated they needed to return to their car, and they began walking towards it. Robinson pursued them and twice tried to punch Smith, but missed. Smith turned and punched Robinson. Swiney also punched Robinson several times.

Smith saw Robinson reaching and "struggling to pull out his firearm." Smith announced that Robinson had a gun and he, Swiney, and Claiborne ran away. As they ran, they heard five to eight gunshots. Swiney yelled that he had been hit, stumbled, and then fell to the ground. Claiborne ran to Swiney's aid, and Smith ran around the corner. Neither looked to see where Robinson went.

Erica Hrudowsky, an intensive care nurse, was on the patio at a nearby bar when she heard gunshots. Hrudowsky heard calls for help and went to tend to Swiney where he was lying on the

---

Nevertheless, he does argue that the evidence did not establish that he acted with premeditation. We limit our analysis to that argument only.

ground. She saw that he was bleeding profusely from a gunshot wound to his lower right groin and applied pressure to the wound. Although Swiney was able to speak to Hrudowsky when she first arrived, he soon lost consciousness. Another bystander, also a nurse, performed CPR until the rescue squad arrived. Despite their efforts, Swiney died from his injuries.

An autopsy showed that he suffered two gunshot wounds, one to his left chest and one to his right leg. Both bullets entered Swiney from behind. The wound to his chest was fatal; it struck his heart as it entered his back and exited through his chest.

Claiborne later described the shooter to the police as a Black man with long braided hair wearing a white tee shirt and dark blue jeans. When Smith returned to the scene, he told the police that he and Robinson were "having social media beef." Days later, Smith told the police that Robinson was the shooter and identified him in a lineup. At trial, Smith identified Robinson, emphasizing that he was a "hundred percent" certain that Robinson was the shooter.

Richmond Police Detective Higgins testified that he viewed surveillance video from the bar and a nearby restaurant. The restaurant video captured Smith, Claiborne, and Swiney walking with another man following a short distance behind. A still photo from the video shows that the man following them is a Black man with long braided hair wearing a white shirt and jeans. The footage from the bar showed the crowd on the patio ducking moments later, presumably in response to hearing the gunfire, although the video did not include any audio.

Marissa Mancini testified that she lived in an apartment across the street and was on her porch working on her computer when she heard an argument. She looked up and saw about five people arguing "with elevated voices" on the sidewalk. She stated that it "seemed for a second like it was going to break up," but then the fighting began again. Mancini saw part of the group run to a nearby parking lot and then heard gunfire. She called for emergency help. She described the

shooter as a young Black man with braids wearing a white shirt and jeans. She saw the shooter run away from the parking lot as the others gathered around a person on the ground.

In his motion to strike, Robinson argued that the Commonwealth failed to prove that he acted with premeditation. The trial court denied the motion, and the jury found Robinson guilty of first-degree murder and use of a firearm during the commission of a felony. Robinson appeals.

ANALYSIS

Robinson contends that the evidence is insufficient to support his conviction. Specifically, he asserts the Commonwealth failed to prove that the killing was premeditated.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

"In Virginia, every unlawful homicide is presumed to be murder of the second degree." *Tizon v. Commonwealth*, 60 Va. App. 1, 10-11 (2012). To elevate the charge to first-degree

murder, the Commonwealth must prove that the defendant committed a "willful, deliberate, and premeditated killing." *Castillo v. Commonwealth*, 70 Va. App. 394, 416 (2019) (quoting Code § 18.2-32). "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). "Because 'premeditation and formation of an intent to kill seldom can be proved by direct evidence, a combination of circumstantial factors may be sufficient.'" *Id.* (alterations omitted) (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004)). The intention to kill "need not exist for any specified length of time prior to the actual killing." *Kirby v. Commonwealth*, 50 Va. App. 691, 700 (2007) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)). Rather, "the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Id.* (quoting *Remington*, 262 Va. at 352).

Here, the evidence proved that Robinson initiated the fight by trying to strike Smith. After Smith and Swiney fought back, Robinson reached for his gun. Smith, Swiney, and Claiborne retreated and as they ran away, Robinson fired his gun multiple times towards the three young men. At that time, he no longer faced any threat and there was no purpose in his shooting other than to kill. The jury reasonably concluded that Robinson fired the gun with the intent to kill. Robinson had time to form the design to kill before he fired the weapon as the victims tried to flee the scene. Robinson's gunfire struck Swiney twice, both bullets entering his body from behind, demonstrating that Swiney was retreating and was not threatening Robinson. A reasonable jury could easily find premeditation on these facts. Accordingly, sufficient evidence supports Robinson's convictions.

CONCLUSION

Finding sufficient evidence to conclude Robinson acted with premeditation, we affirm.

*Affirmed.*