COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Athey and White

WILLIAM JUNIOR CLEMENTS

v.      Record No. 0534-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
MAY 27, 2025

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
J. Frederick Watson, Judge

(E. Gordon Peters, Jr., on brief), for appellant.  Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; Sandra M. Workman, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Campbell County ("trial court") convicted

William Junior Clements ("Clements") of taking indecent liberties with a child under the age of 15

in violation of Code § 18.2-370.  On appeal, Clements contends that the evidence was insufficient to

support his conviction.  We disagree and affirm the trial court's judgment.[1]

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);
Rule 5A:27(a).

Between May 1, 2021, and June 30, 2021, nine-year-old J.P.[3] visited Clements's house to play with his children. On one of those visits, Clements asked J.P. to come into his bedroom. When J.P. complied, Clements closed the bedroom door, pulled down his pants, forced J.P. onto his knees, pushed J.P.'s head "down there," and ordered J.P. to perform oral sex on him. In response, J.P. began "hollering" and ran from the room. Because J.P. was afraid that he would "get in trouble," he did not report the incident to his family that day. However, in December of 2021, J.P. told his mother what Clements had done.

J.P.'s mother reported the child abuse to law enforcement, and J.P. was subsequently interviewed concerning the abuse by Amber Blaire ("Blaire"), of the Children's Trust Child Advocacy Center. Based, in part, on that interview, law enforcement issued a warrant for Clements's arrest on charges that he took indecent liberties with a child under the age of 15.

At trial, J.P. testified concerning the incident and the Commonwealth also introduced a portion of J.P.'s recorded interview with Blaire into evidence. At the conclusion of the Commonwealth's evidence, Clements moved to strike, asserting that inconsistencies between J.P.'s statements during the interview and J.P.'s testimony at trial precluded the Commonwealth from proving the charge against him. In support, Clements cited several inconsistencies between J.P.'s

---

[2] "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

Parts of the record in this case are sealed. "[T]o the extent that we mention facts found only in the sealed record, we unseal only those specific facts, finding them relevant to our decision in this case. The remainder of the previously sealed record remains sealed." *Chenevert v. Commonwealth*, 72 Va. App. 47, 52 n.1 (2020) (quoting *Church v. Commonwealth*, 71 Va. App. 107, 112 n.1 (2019)).

[3] We use initials to protect the identity of the child.

interview and testimony at trial, including: 1) J.P. stated that Clements "made [him] suck his thing" in the interview[4] but subsequently testified at trial that he did not perform oral sex; 2) J.P. stated that he was watching TV in Clements's children's room when Clements called him into the bedroom but testified at trial that he was in the kitchen when Clements called him into the bedroom; 3) J.P. recalled that Clements's children "came and got [him]" from Clements's room during the interview but testified at trial that nobody came to get him and that he was able to run out of the room; 4) J.P. said that the bedroom door was locked and he did not know how to unlock it during the interview but later testified at trial that he could unlock it and run out of the room; and 5) that J.P. initially stated that Clements's pants were "off" but testified at trial that they were only pulled down. In response, the Commonwealth conceded that there were inconsistencies between J.P.'s interview and his testimony at trial but noted that two years had elapsed since the alleged incident and J.P. had consistently testified that Clements "asked [J.P.] to suck his thing" and made an attempt to move J.P.'s head toward his penis. The trial court subsequently denied the motion.

Clements testified on his own behalf and denied J.P.'s allegations. Clements's wife also testified that she was always at the house when J.P. was there and that she "normally watched [the children]." During closing arguments, Clements renewed the arguments made in his motion to strike on the same grounds, and counsel for Clements pointed out that on cross-examination, J.P. admitted to falsely telling Blaire that the twins "came into the room" because he was scared he would get into trouble. He also contended that it seemed too convenient that "the only part of these two versions of events that is consistent . . . is the part that is instrumental for the Commonwealth to prove in order to find guilt beyond a reasonable doubt."

_____

[4] This statement was made at the beginning of the portion of the video interview introduced into evidence at trial. Later in the interview, J.P. was specifically asked, "Did you suck it?" He replied that Clements "tried to" by putting his head "down there" but the other children came and got him.

The trial court found that J.P.'s testimony was not "rehearsed," noting that it was "able to watch [J.P.] testify" and that "[t]here were no hesitations to his responses." Moreover, the court concluded that although there were inconsistencies in his accounts of the event, "the central tale is the same." The trial court subsequently convicted Clements of taking indecent liberties with a child and sentenced him to five years' incarceration with four years suspended. Clements appealed.

## II. ANALYSIS

### A. *Standard of Review*

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly*, 41 Va. App. at 257). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

### B. *The evidence was sufficient to convict Clements.*

Clements contends that J.P.'s prior interview statement and trial testimony were both inconsistent and uncorroborated. Hence, Clements argues, the Commonwealth failed to prove that he acted with lascivious intent. We disagree.

Under Code § 18.2-370, "[a]ny person 18 years of age or over, who, with lascivious intent, knowingly and intentionally commits any of the following acts with any child under the age of 15 years is guilty of a Class 5 felony . . . ." The forbidden acts include "[e]xpos[ing] his or her sexual or genital parts to any child to whom such person is not legally married or propos[ing] that any such child expose his or her sexual or genital parts to such person"; "propos[ing] that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propos[ing] that such person feel or fondle the sexual or genital parts of any such child"; "propos[ing] to such child the performance of an act of sexual intercourse, anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under § 18.2-361"; and "entic[ing], allur[ing], persuad[ing], or invit[ing] any such child to enter any vehicle, room, house, or other place, for any of the purposes set forth in the preceding subdivisions of this subsection." Code § 18.2-370(A).

The element of lascivious intent may be established by "evidence that the defendant was sexually aroused; that he made any gestures toward himself or to [the victim]; that he made any improper remarks to [the victim]; or that he asked [the victim] to do anything wrong." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (first alteration in original) (quoting *McKeon v. Commonwealth*, 211 Va. 24, 27 (1970)).

Settled law holds that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Id.* at 88 (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)). Moreover, our cases recognize that a "victim's youth, fright and embarrassment certainly provide[] the jury with an acceptable explanation for [delayed reporting of sexual assault]." *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); s*ee*

- 5 -

*also Wilson*, 46 Va. App. at 88 (holding that 12-year-old victim's delayed report due to her fear of the defendant and "shame and embarrassment at what was happening to her" was consistent with human experience).

The "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (alteration in original) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). However, Clements fails to assert that J.P.'s testimony was inherently incredible or contrary to human experience; rather, he broadly asserts that the inconsistencies in J.P.'s statements during his interview and testimony at trial render the evidence insufficient to prove that he acted with lascivious intent.

"Where credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010).

> When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts[,] which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

*Id.* at 718-19 (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)).

Here, J.P. explained that he delayed reporting the incident because he was scared that he would get in trouble. Despite the delay, the trial court permissibly accepted J.P.'s explanation and his account of the sexual abuse that Clements inflicted upon him. Moreover, the trial court considered the inconsistencies in J.P.'s recollection of the events and found that the "central tale"

remained "the same." This "central tale"—that Clements called J.P. into his room, exposed his penis, put J.P.'s head "down there," and told J.P. to perform oral sex—was sufficient to establish that Clements acted with lascivious intent. *See Simon*, 58 Va. App. at 206. The trial court specifically believed J.P.'s testimony and found him a credible and reliable witness, and we will not disturb this finding on appeal. Finally, J.P.'s testimony required no corroboration. *See Wilson*, 46 Va. App. at 87. Hence, the Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Clements was guilty of taking indecent liberties with a child under 15 years of age.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*