# COURT OF APPEALS OF VIRGINIA

## Record No. 1799-24-1

HERBERT JOUNIOUS BUTLER, JR.

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Argued by videoconference

Opinion Issued April 21, 2026[*]

## FROM THE CIRCUIT COURT OF YORK COUNTY
Richard H. Rizk, Judge

Charles E. Haden for appellant.

Jennifer L. Guiliano, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE STEVEN C. FRUCCI

Following a bench trial, the circuit court convicted Herbert Jounious Butler, Jr., of robbery by use or display of a firearm, possession of a firearm by a non-violent felon, aggravated malicious wounding, and two counts of use of a firearm in the commission of a felony. Butler contends that the evidence is insufficient to establish that he committed the crimes. For the following reasons, we affirm the circuit court's judgment.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] The sentencing order reflects that Butler was sentenced to 20 years of incarceration with 15 years suspended on the robbery by use or display of a firearm conviction, 5 years of incarceration for the possession of a firearm by a non-violent felon conviction, life with all but 10 years of incarceration suspended for the aggravated malicious wounding conviction, 3 years of incarceration for one of the use of a firearm convictions, and 5 years of incarceration for the

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,' the prevailing party below." *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On April 11, 2021, G.W., along with his friend, Linda Foster, returned to his York County home in Ivy Arch following an out-of-state trip.[3] After dropping his luggage off at his house, G.W. drove Foster home. "While [G.W.] was in the house," Foster received a phone call. During that call, G.W. heard Foster tell the other party that "she would be home in ten minutes" and "park in the back."

G.W. returned to his house. As G.W. put his key in the door, a man "came around the side of the house" and approached G.W. from behind. Then, the man grabbed G.W. around his neck and displayed a handgun. Because the porch light was on, G.W. saw that the man was wearing a blue cloth bandana mask and a blue hoodie.

The man said something that G.W. could not understand, and G.W. answered, "you just got to kill me." The man responded by hitting G.W. in the head with the butt of the gun. G.W. fell to the ground where the men wrestled until the man ended up on top of G.W. The man waved the gun

---

second use of a firearm conviction. Consistent with the circuit court's oral pronouncement, this would give him a total sentence of life plus 33 years of incarceration, with all but 28 years suspended. However, the sentencing order also states that "ALL BUT 25 YEARS" of the sentence is suspended. We remand to the circuit court to correct the clerical error in the sentencing order. *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).

[3] We use initials rather than names to protect the privacy of the victim.

and said, "you think I'm playing with you." The man then fired two or three "warning shots" across G.W. and into the air. Then, the man stood up and shot G.W. four times in his legs and once in his groin.

When G.W. raised his hand, the man shot G.W. through his hand. G.W. gave the man his wallet, which contained $500 in cash. After taking the wallet, the man shot G.W. again and then left. But about a minute later, the man returned. He rolled G.W. over, took his backpack, and shot him twice in his buttocks. Finally, the man left and did not return.

At trial, G.W. testified that he only saw the one person during the robbery. G.W. did not recognize the robber's voice, and he identified the robber as "African American."

York and Poquoson Sheriff's Officer Layne Forrest investigated the shooting, including searching for any home surveillance videos that might shed light on what happened. In doing so, he obtained video evidence that showed a subject going between two homes. He "walked that area" and located several items, including a blue bandana. He estimated that he found the bandana about 1,500 feet from where the shooting took place within 10 to 12 hours of the shooting. When shown a photograph of the bandana at trial, G.W. identified it as the bandana that the robber wore, saying, "That's definitely the mask I seen on who shot me."[4]

Law enforcement submitted the bandana to the Department of Forensic Science for analysis.[5] The certificate of analysis indicated that "[t]he major profile developed from the exposed portions of the bandana and knot was found to be consistent with the following individual: . . . Herbert J. Butler (AKA Herbert Julius Butler, Herbert Julius Butler, Jr.)."

_____

[4] On cross-examination, G.W. testified that he did not know Butler. He admitted that he had "a lot of marijuana" in his home. The Commonwealth conceded that G.W. was convicted of misdemeanor marijuana possession with intent.

[5] At oral argument, the Commonwealth pointed out that the certificate of analysis also showed that a blue nitrile glove was tested. However, there was no testimony nor evidence of where this glove came from prior to being sent for testing.

Investigator Jason Stump also investigated the shooting. He found 20 cartridge casings in front of G.W.'s house, which he submitted for forensic analysis. A Glock 19 nine-millimeter handgun, serial number BDLV214, was submitted for comparison as Item 74. According to an oral stipulation to the circuit court, the "firearm was recovered in Newport News on May 13th of 2021 in a vehicle by Newport News police officer Brandon Moore. It was recovered in the vehicle that Mr. Herbert Butler, the defendant, was driving. The firearm itself was under the passenger's seat[.]" The parties also agreed that Foster was in the passenger's seat. The certificate of analysis revealed that the shell casings were "identified as having been fired in the Item 74 firearm."

After the Commonwealth rested, Butler moved to strike the evidence arguing that the two items which linked Butler to the crime, the bandana and the firearm, were insufficient to establish the identity of Butler as the perpetrator. Butler argued that he was "operating a vehicle. Ms. Foster [wa]s magically, once again, lo and behold, in the picture, sitting right above the firearm which state lab testing connects to this incident." He concluded that "with nothing else connecting Mr. Butler to the scene at all other than two items connected to this crime and that Mr. Butler was in the vicinity," the evidence was insufficient to establish that Butler was the perpetrator of the offenses. The circuit court denied Butler's motion to strike.

Butler then testified on his own behalf. He denied knowing G.W. and claimed that he had never seen him before trial. He explained that he knew Foster and "met her a little bit before all of this was going on." He testified that he learned that people were attempting to connect him to the April 11 robbery "days later" and that for "[d]ays after [he] just kept hearing stuff tied with Ms. Foster's name, including [him] in there." Butler added that he lived in Newport News and had never lived in Ivy Arch and was unfamiliar with that area.

As to the firearm, Butler admitted that it was discovered in a car that he was driving in Newport News. He testified that during the night, Foster called him asking him to pick her up from

her home.  After picking her up, they stopped at a store.  Foster went into the store while Butler remained in the car.  After that, the police stopped Butler's car and found the firearm.  Butler denied bringing a firearm into the car or knowing that it was there.  Butler denied knowing that Foster brought a firearm into the car, explaining that "[s]he had nothing on her except for a pocketbook bag."  Furthermore, he testified that he never saw her remove a firearm from her bag.

Butler's counsel renewed his motion to strike as part of his closing argument.  He argued that Butler could not provide an alibi because he had no reason to remember that day.  He also argued that "the common nexus in this case is that Linda Foster seems to be everywhere . . . Linda Foster knows [G.W.] and Linda Foster knows Herbert Butler[.]"  He noted that G.W. "was robbed immediately upon walking back in his house from dropping Ms. Foster off."  He continued, arguing that a reasonable theory of innocence in this case that is not excluded by evidence, is that there was "[s]ome kind of beef or tie between [G.W.] and Mr. Butler other than the fact they both know Linda Foster."  He further argued that there was "[n]o other evidence connecting him to [York County] other than one object" and that Butler had been "set up" by Foster.  Butler contended that, assuming without conceding that the DNA evidence was reliable, "it is really easy to grab a bandanna, tell someone wear a blue bandanna while you do this, throw that one down, and then I'm going to put the gun under my seat in the car."  Butler added, "right after Ms. Foster went in the store Mr. Butler was pulled over.  Which seems like quite a coincidence."  Butler concluded, "There is a reasonable theory of innocence that is not excluded by the evidence.  That someone else did this and wanted Herbert Butler to take the fall for it."

The circuit court disagreed and, after summarizing the evidence in the record, found Butler guilty of all charges, saying, "There's clearly a setup, but the Court finds the setup is [G.W.] was set up.  He was set up for a robbery.  That's the undisputed only reasonable conclusion that this trier of fact can find."  The circuit court found that G.W. had testified to a "common thread" or "link" that

he had with Butler: Foster. The circuit court then discussed the DNA and ballistic evidence tying Butler to the shooting. The circuit court concluded, "There is no reasonable hypothesis of innocence that has been offered by way of testimony . . . I've got the bandanna that is consistent with Mr. Butler's DNA profile, and I've got the firearm in the car that is the same firearm that shot these 20 shots[.]" Butler appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512); *see Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013)). On appeal, "[w]e review the fact finder's determination regarding the identity of the perpetrator considering 'the totality of the circumstances.'" *Id.* (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002)).

As with any element of an offense, identity may be proved by direct or circumstantial evidence. *See Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "Circumstantial evidence

is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

On appeal, Butler argues that the Commonwealth's evidence failed to prove that he was the masked gunman, contending that it "merely constituted suspicious circumstances." We disagree.

Here, considering the totality of the circumstances, a reasonable finder of fact could conclude that Butler was the perpetrator based upon both the DNA evidence tying him to the crime and the fact that the firearm used to commit the crime was found under the passenger's seat of the car that he was driving. With respect to the DNA evidence, the record indicates that: (i) the perpetrator wore a bandana in the commission of the crime, (ii) law enforcement located a bandana near the crime scene shortly after it occurred, (iii) G.W. identified that bandana as the same bandana as the one worn by the perpetrator, and (iv) DNA analysis indicated that the major profile developed from the bandana was consistent with a single individual: Butler. In his testimony at trial, Butler did not provide any evidence suggesting an innocent explanation for how his DNA ended up on the bandana found near the scene of the crime, in an area far from where he lived and that he claimed was unfamiliar to him. Butler's attorney suggested that Butler could have been framed because "it is really easy to grab a bandana" and tell someone to wear it. But Butler never testified that anyone induced or coerced him into wearing the bandana. *See Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993) ("The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."). As a result,

based on this DNA evidence, a reasonable finder of fact could conclude that Butler was the perpetrator. *See Burrous*, 68 Va. App. at 281 (stating that "[b]ecause the bandana located by the police was the bandana used to commit the robbery and appellant's DNA was the only DNA found on the bandana, the evidence was sufficient for a rational factfinder to conclude that appellant was the robber").

In addition to the DNA evidence, police found the firearm that was used to commit the crime under the passenger seat of Butler's car. At trial, Butler's attorney suggested that Foster planted the firearm to frame him. But there is no evidence in the record indicating that the firearm was planted in the car or that Foster, or anyone else, manipulated law enforcement into stopping Butler so that the firearm could be discovered. *See Hamilton*, 16 Va. App. at 755; *see also Cook v. Commonwealth*, 226 Va. 427, 433 (1983) (explaining that to sustain a conviction there is no need to exclude hypotheses that flow from the imagination of defense counsel). Overall, looking at the totality of the evidence, the evidence was sufficient for a reasonable trier of fact to conclude that Bulter committed the offense.

CONCLUSION

Accordingly, we affirm the circuit court's judgment. We remand for the limited purpose of correcting the clerical error referenced in footnote two.

*Affirmed and remanded.*